## DISCIPLINARY COUNSEL *v.* JOHNSON.

[Cite as *Disciplinary Counsel v. Johnson,*
106 Ohio St.3d 365, 2005-Ohio-5323.]

(No. 2004–1811—Submitted March 8, 2005—Decided October 19, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Christine Ann Johnson, of Uniontown, Ohio, Attorney Registration No. 0070595, was admitted to the practice of law in Ohio in 1999. On October 6, 2003, relator, Disciplinary Counsel, charged respondent with having violated the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, based on comprehensive stipulations and other evidence, made findings of misconduct and a recommendation, which the board adopted.

### Misconduct

{¶ 2} Relator's complaint charged that respondent had seriously overcharged for her services as court-appointed counsel in Stark County Juvenile Court and had thereby violated DR 1–102(A)(4) (barring conduct involving dishonesty, deceit, fraud, or misrepresentation), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), and 2–106(A) (barring a lawyer from collecting a clearly excessive fee).

{¶ 3} In 1985, Christine Johnson began working as a legal secretary for the law office that employed Darrell Wendell Holland Jr., another lawyer whom relator also charged with professional misconduct in a related case. See *Disciplinary Counsel v. Holland,* 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361. By the time she finished law school, passed the bar examination, and was admitted to the practice of law, respondent had worked as Holland's secretary for 14 years. After her bar admission, respondent was hired as a lawyer by Holland's law office.

{¶ 4} Over the years, Holland has regularly been appointed as counsel by the Stark County Juvenile Court. While working as Holland's secretary, respondent learned from him how to fill out and file fee-claim forms, entitled "Motion, Entry, and Certification for Appointed Counsel Fees," to obtain payment for his court appointments. Later, as a lawyer, respondent also accepted appointments from the juvenile court, and she continued to complete the fee-claim forms for her own reimbursement in accordance with Holland's billing methods.

{¶ 5} Respondent accepted juvenile court appointments during 2001 to appear as counsel at arraignments and regular court hearings. She often appeared in court on behalf of two or more clients on the same day. Arraignments in the juvenile court normally begin at 2:30 p.m. and end by 4:30 p.m., although lawyers may meet with clients from 1:00 p.m. Thus, the most that an appointed attorney can legitimately claim for an afternoon of in-court work in juvenile court arraignment proceedings is 3½ hours. The rest of the juvenile court docket is normally heard from 8:30 a.m. to 12:00 p.m. and from 1:00 to 4:30 p.m. Thus, seven hours is the most that an appointed attorney can legitimately claim for one day of in-court work in juvenile court proceedings other than arraignments.

{¶ 6} The fee-claim form, which was prescribed by the Ohio Public Defender and which respondent conceded was "self-explanatory," requires information that substantiates claimed fees, including the time the court-appointed attorney devotes to each client's case. And because the fee rates for in-court and out-of-court time differ—$40 per hour for services performed in court, $30 per hour for other compensable services—the form provides separate spaces for the attorney to record the hours spent on each type of service. Lawyers must report their time in six-minute increments and certify that they truly performed all the services claimed for the client. The form further provides for reimbursement of certain out-of-pocket expenses, such as necessary travel.

{¶ 7} A separate fee-request form is required for each client. Filed forms are reviewed by the court and, unless a fee is extraordinary, generally approved based on the lawyer's certification. After the county pays the requested fees, the forms are sent to the state for partial reimbursement to the county of the cost of providing counsel to indigent defendants.

{¶ 8} In February 2001, the Ohio Public Defender informed the county of irregularities in the billing practices of certain court-appointed attorneys in the juvenile court. In October 2001, the Canton Police Department initiated an investigation of these allegations at the request of the Stark County Prosecutor's Office. The police investigation revealed 13 occasions on which respondent had submitted bills for an impossible number of in-court and out-of-court hours on a single day, ranging from 14½ to 33½ hours. The prosecutor alleged that respondent's 13 instances of overbilling resulted in $8,130 in improper fees.

{¶ 9} Relator charged and the parties stipulated that respondent claimed fees as follows:

{¶ 10} 1. On April 5, 2001, respondent represented five clients at emergency arraignments and billed the court for three in-court hours and three out-of-court hours for each of the five clients, making a total of 30 hours billed for the day.

{¶ 11} 2. On May 2, 2001, respondent represented five clients either at emergency arraignments or in hearings on the regular court docket. Respondent billed the court for three in-court hours for each of the five clients. She also claimed 13½ out-of-court hours for those clients, making a total of 28½ hours billed for the day.

{¶ 12} 3. On May 4, 2001, respondent represented three clients at emergency arraignments. Respondent billed the court for three in-court hours for each client. She also charged another 9½ hours for out-of-court work for these clients, making a total of 18½ hours billed for the day.

{¶ 13} 4. On May 10, 2001, respondent represented three clients at emergency arraignments. Respondent billed the court for three in-court hours and three out-of-court hours for each client, making a total of 18 hours billed for the day.

{¶ 14} 5. On May 29, 2001, respondent represented four clients at emergency arraignments. Respondent billed the court for 12 in-court hours and 12 out-of-court hours, making a total of 24 hours billed for the day.

{¶ 15} 6. On June 29, 2001, respondent represented three clients at emergency arraignments. Respondent billed the court for nine in-court hours and also for 5½ out-of-court hours for these clients, making a total of 14½ hours billed for the day.

{¶ 16} 7. On July 9, 2001, respondent represented four clients in five cases on the regular juvenile court docket. Respondent billed for six in-court hours for one of the clients and three in-court hours for each of the other three. She also claimed three out-of-court hours for these clients, making a total of 18 hours billed for the day.

{¶ 17} 8. On July 25, 2001, respondent represented three clients in four cases on the regular juvenile court docket. Respondent billed for six in-court hours for

one client and three in-court hours for each of the other two. She also claimed seven out-of-court hours for these clients, making a total of 19 hours billed for the day.

{¶ 18} 9. On August 6, 2001, respondent represented four clients at emergency arraignments. She billed for three in-court hours for each client and 11 out-of-court hours, making a total of 23 hours billed for the day.

{¶ 19} 10. On August 13, 2001, respondent represented six clients at emergency arraignments. Respondent billed three in-court hours for each client and 11 out-of-court hours, making a total of 29 hours billed for the day.

{¶ 20} 11. On August 20, 2001, respondent represented six clients either at emergency arraignments or on the regular juvenile court docket. Respondent billed three in-court hours for each client and 15½ out-of-court hours, making a total of 33½ hours billed for the day.

{¶ 21} 12. On August 29, 2001, respondent represented five clients at emergency arraignments. Respondent billed three in-court hours and three out-of-court hours for each client, making a total of 30 hours billed for the day.

{¶ 22} 13. On August 30, 2001, respondent represented four clients at emergency arraignments. Respondent billed three in-court hours and three out-of-court hours for each client. She also represented three other clients and billed two out-of court hours for each of them, making a total of 30 hours billed for the day.

{¶ 23} By charging the same hours of work to multiple clients, respondent increased the $30 and $40 hourly billing rates by as much as sixfold. But these overcharges were not readily apparent to those responsible for approving the fees, because the claims for fees were made individually for each client on separate forms.

{¶ 24} On August 30, 2002, respondent was indicted, as was Holland, by the Stark County Grand Jury on one count of grand theft in violation of R.C. 2913.02(A)(3), a felony of the fourth degree.[1] Respondent was found not guilty after a bench trial. The judge found that the state had not proved a knowing intent to deceive, a required element of the crime.

{¶ 25} The board found clear and convincing evidence that respondent had filed false, inflated fee requests and that she had thereby violated DR 1–102(A)(4) and 1–102(A)(6). Because she had repeatedly billed at a rate far above the agreed

---

1. {¶ a} R.C. 2913.02(A) provides:

{¶ b} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶ c} " * * *

{¶ d} "(3) By deception."

rate, the board also found respondent in violation of DR 2–106(A). In making these findings, the board noted that that respondent's acquittal did not preclude charges of professional misconduct under principles of res judicata. *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 70 O.O.2d 175, 322 N.E.2d 665.

## Sanction

{¶ 26} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 27} In aggravation, the board found that respondent had acted out of self-interest, committed multiple offenses, and engaged in a pattern of wrongdoing by repeatedly overcharging the juvenile court, stopping only after an official investigation. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). According to the board, respondent also did not acknowledge the wrongfulness of her conduct, BCGD Proc.Reg. 10(B)(1)(g), because she defended her billing practices by suggesting that her services were worth what she charged and that she had done the court a favor by accepting court-appointments that few other lawyers would take. Respondent also claimed that she had been taught how to charge by a veteran practitioner, that no one else had told her that her fees were improper or about the manual establishing the proper procedure, and that she had relied on the juvenile court judges' allowance of her fees. The board was not persuaded by these defenses, observing that respondent knew that the manner and amount of her billing was not in accord with the attorney certifications she signed on each fee-request form she submitted for payment.

{¶ 28} In mitigation, the board found that respondent had no history of disciplinary sanctions and had cooperated fully in the investigation and the proceedings before the board. BCGD Proc.Reg. 10(B)(2)(a) and (d). Respondent also had a good professional reputation in her community. Finally, respondent subsequently consented to a reduction to her fees in some cases, which demonstrates that she has acknowledged her errors in billing. BCGD Proc.Reg. 10(B)(2)(c). The board, however, noted that the specific amount and other terms of this arrangement were not disclosed in the record.

{¶ 29} Relator advocated a one-year suspension with six months stayed. Respondent argued that her conduct did not violate any Disciplinary Rules. The board adopted the sanction suggested by relator and accepted by the panel, recommending that respondent be suspended from the practice of law for one year, with the final six months of the suspension period stayed.

## Review

{¶ 30} Respondent now concedes that she violated DR 1–102(A)(6) and 2–106(A). She objects, however to the finding that she violated DR 1–102(A)(4) and to the board's recommended sanction. Raising propositions of law similar to those that Holland, her mentor, offered in his disciplinary case, respondent claims that the board misconstrued her defense and equated her claim of lack of deceptive intent to a refusal to acknowledge wrongdoing. Respondent also insists that a one-year suspension with a six-month stay is too severe. We overrule both objections and adopt the board's findings of misconduct and recommendation in full.

### DR 1–102(A)(4)

{¶ 31} Respondent was acquitted of grand theft because the judge in her criminal case found that the state had not proved intent to deceive. Respondent urges us to reach a similar conclusion, arguing that because she did not hide the fact that she was overcharging for juvenile court legal fees, her billing practices do not constitute a deceptive act. We disagree insofar as the violation of DR 1–102(A)(4) is concerned.

{¶ 32} As we explained in *Disciplinary Counsel v. Holland,* 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361:

{¶ 33} "To collect legal fees, appointed counsel in the Stark County Juvenile Court is expected to file a separate form for each client. Respondent consequently never claimed fees on the same form for representing more than one client at the same time or for more hours than the court was open. Thus, the juvenile court judges, among other officials responsible for approving these fees, had little reason to suspect that respondent was not complying with the explicit instructions on the forms. The judges and others doubtlessly reviewed respondent's billing practices on a case-by-case basis, which presented too small a picture to reveal respondent's excessive charges. They also doubtlessly trusted that respondent, a seasoned juvenile court practitioner, would not take advantage of the system." Id. at ¶ 18.

{¶ 34} Here, as in the *Holland* case, respondent now admits that she over-billed, but claims that she assumed that the practice was acceptable given the judges' routine approval of her fee requests. And yet, respondent signed this certification on each of the underlying 59 fee-request forms: "I certify that I have received no compensation in connection with providing representation in this case other than that described in this motion or which has been approved by the Court in a previous motion, *nor have any fees and expenses been duplicated on any other motion.* I, or an attorney under my supervision, have performed all legal services itemized in this motion." (Emphasis added.) Consistent with *Holland,*

we find that this certification and its self-evident falsity warranted the board's finding that respondent violated DR 1–102(A)(4).

*The Appropriate Sanction*

{¶ 35} In *Holland,* supra, we also said:

{¶ 36} "Padding client bills with hours not worked is tantamount to misappropriation. *Toledo Bar Assn. v. Batt* (1997), 78 Ohio St.3d 189, 677 N.E.2d 349. And when professional misconduct involves misappropriation, disbarment is the presumptive sanction, although this sanction may be tempered with sufficient evidence of mitigating circumstances. *Dayton Bar Assn. v. Gerren,* 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14.

{¶ 37} "Respondent engaged in double billing, which is the practice of 'billing of fees and costs to more than one client for the same work or the same hours.' Hopkins, Law Firms, Technology, and the Double–Billing Dilemma (1998), 12 Geo.J.Legal Ethics 93, 99. The impropriety of this practice, as well as respondent's having generally charged for services never performed, should have been obvious to him. *In re Entin* (2001), 287 A.D.2d 943, 944, 732 N.Y.S.2d 648. We are not persuaded, therefore, by respondent's claim that he relied completely on the juvenile court's unknowing acquiescence in his billing practices as approval of the charges." Id., 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 21.

{¶ 38} We found in *Holland* that repeatedly taking advantage of the fund for court-appointed counsel "exploited an already overburdened system designed to aid the poorest members of our society, lessened public confidence in the legal profession, and compromised its integrity. In light of the serious harm caused to the taxpaying public, the judicial system, and the legal profession," we imposed a one-year suspension of the lawyer's license to practice law. Id. at ¶ 22. Respondent committed the same misconduct here; however, the circumstances surrounding her transgressions are more extenuating than in *Holland.*

{¶ 39} Respondent was a comparatively inexperienced lawyer at the time she committed her misconduct. And although new lawyers are just as accountable as more seasoned professionals for not complying with the Code of Professional Responsibility, we have made some allowances in the past for novice practitioners. *Columbus Bar Assn. v. Moreland,* 97 Ohio St.3d 492, 2002-Ohio-6726, 780 N.E.2d 579; *Columbus Bar Assn. v. Taylor* (1998), 84 Ohio St.3d 149, 702 N.E.2d 411. Moreover, respondent was following the example of a lawyer whose judgment she had trusted for many years before she was admitted to the bar. Her reliance was misplaced, but understandable.

{¶ 40} We therefore adopt the board's findings that respondent violated DR 1–102(A)(4), 1–102(A)(6), and 2–106(A). We also find the board's recommendation to be an appropriate sanction, but we add these conditions for the six-month

stayed suspension: (1) respondent shall commit no further misconduct during the stay and (2) respondent shall make full restitution to Stark County.

{¶ 41} Respondent is therefore suspended from the practice of law in Ohio for one year; however, the last six months of this suspension are stayed, providing that respondent commits no further misconduct and makes complete restitution to Stark County. Thus, in addition to complying with the other requirements for her reinstatement under Gov.Bar R. V(10), respondent shall, within six months of this order, repay all unearned fees, in an amount to be determined by relator, received for the 13 days on which she overcharged for her services, reduced by any sums she may have already paid to the county via a reduction in fees, also to be determined by relator. If respondent violates the terms of this stay, the stay will be lifted, and respondent shall serve the full year of suspension.

{¶ 42} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

James L. Burdon, for respondent.