James L. Burdon, for respondent.

DISCIPLINARY COUNSEL *v.* HOLLAND.

[Cite as *Disciplinary Counsel v. Holland,*
106 Ohio St.3d 372, 2005-Ohio-5322.]

(No. 2004–1812—Submitted March 9, 2005—Decided October 19, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Darrell Wendell Holland Jr., of Canton, Ohio, Attorney Registration No. 0022551, was admitted to the practice of law in Ohio in 1982. On October 6, 2003, relator, Disciplinary Counsel, charged respondent with having violated the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including comprehensive stipulations and other evidence, and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 2} Relator's complaint alleged that respondent had seriously overcharged for his services as court-appointed counsel in Stark County Juvenile Court and had thereby violated DR 1–102(A)(4) (barring conduct involving dishonesty, deceit, fraud, or misrepresentation), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), and 2–106(A) (barring a lawyer from collecting a clearly excessive fee).

{¶ 3} Respondent has a great deal of experience as a public-sector lawyer and in representing juveniles. After his admission to the Ohio bar, he worked as a senior staff attorney in the Stark County Public Defender's Office and was assigned to the Stark County Juvenile Court. He later served as chief of the Juvenile Division of the Stark County Prosecuting Attorney's Office and as an assistant Ohio Attorney General. Since 1985, respondent has practiced privately and also served as a magistrate in the Canton area, as a fill-in magistrate in the Massillon and Akron areas, and until mid–2002, as a magistrate for the village of Hartville.

{¶ 4} During 2000 and 2001, respondent accepted appointments from the Stark County Juvenile Court, often representing multiple juvenile clients at arraignments and other court proceedings all on the same day. Arraignment proceedings in the juvenile court normally begin at 2:30 p.m. and end by 4:30 p.m., although lawyers may meet with clients from 1:00 p.m. Thus, the most that an appointed attorney can legitimately claim for an afternoon of in-court work in juvenile court arraignment proceedings is 3½ hours. The rest of the juvenile court docket is normally heard from 8:30 a.m. to 12:00 p.m. and from 1:00 to 4:30 p.m. Thus, seven hours is the most that an appointed attorney can legitimately claim for one day of in-court work in juvenile court proceedings other than arraignments.

{¶ 5} To be paid for their services, court-appointed counsel must submit to the juvenile court a form entitled "Motion, Entry and Certification for Appointed Counsel Fees." This form, which was prescribed by the Ohio Public Defender and which respondent conceded was "self-explanatory," requires information that substantiates a claim for fees, including the time the court-appointed attorney devoted to each client's case. And because the fee rates for in-court and out-of-court time differ—$40 per hour for services performed in court, $30 per hour for other compensable services—the form provides separate spaces for the attorney to record the hours spent on each type of service. Lawyers must report their time in six-minute increments and certify that they truly performed all the services claimed for the client. The form further provides for reimbursement of certain out-of-pocket expenses, such as necessary travel.

{¶ 6} A separate fee-request form is required for each client. Filed forms are reviewed by the court and, unless a fee is extraordinary, generally approved based on the lawyer's certification. After the county pays the requested fees, the forms are sent to the state for partial reimbursement to the county of the cost for providing counsel to indigent defendants.

{¶ 7} Notwithstanding the fee-form requirements, respondent did not apportion among his appointed clients the per-hour charges for his in-court services on a given day. No matter how much time he spent on a particular client's case, respondent repeatedly requested fees for three in-court hours per client. That is, if respondent represented three clients in court in a single three-hour session, he would claim fees for three in-court hours in each case, for a total of nine hours; if eight clients had a court appearance on the same day, he claimed fees for 24 hours; and so on.

{¶ 8} This practice resulted in outrageous fee charges, sometimes for more in-court hours than the juvenile court was open in a day. But because fees are claimed in each client's case on separate forms filed at different times, the impropriety of respondent's charges for in-court time was not readily apparent to those who approved the fees. In fact, none of the juvenile court judges realized that respondent was inflating his fees by charging several clients for the same three hours. He seemed to feel justified in overcharging because he rarely asked to be reimbursed for expenses such as travel, because it was "absolutely impossible to distinguish one case from another," and because the juvenile court judges did not reject his fee requests.

{¶ 9} In February 2001, the Ohio Public Defender informed the county of irregularities in the billing practices of certain court-appointed attorneys in the juvenile court. In October 2001, the Canton Police Department initiated an investigation of these allegations at the request of the Stark County Prosecutor's Office. The police investigation revealed, and the parties later stipulated, that

respondent had submitted 138 forms to the juvenile court, which, when compared, show that he claimed fees for an impossible number of in-court hours on 34 different days, ranging from nine to 24 hours per day. In this way, respondent charged the county for fees he never earned, an amount the prosecutor alleged to be $11,570.

{¶ 10} On August 30, 2002, respondent and another lawyer, Christine A. Johnson, who had also allegedly overcharged for court-appointed representation, were indicted by the Stark County Grand Jury on one count each of grand theft in violation of R.C. 2913.02(A)(3),[1] a felony of the fourth degree. See *Disciplinary Counsel v. Johnson*, 106 Ohio St.3d 365, 2005-Ohio-5323, 835 N.E.2d 354. Respondent was found not guilty after a bench trial. The judge concluded that the state had not proved respondent's knowing intent to deceive, a required element of the crime.

{¶ 11} The board found clear and convincing evidence that respondent's billing practices were dishonest and deceptive and that by filing his claim requests, he had violated DR 1–102(A)(4) and 1–102(A)(6). Because he had accepted court appointments at a clearly stated rate of compensation and then submitted claims for payment well above that rate, the board also found respondent in violation of DR 2–106(A). In making these findings, the board noted that respondent's acquittal did not preclude charges of professional misconduct under principles of res judicata. *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 70 O.O.2d 175, 322 N.E.2d 665.

## Sanction

{¶ 12} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 13} In aggravation, the board found that respondent had acted out of self-interest, committed multiple offenses, and engaged in a pattern of wrongdoing because he had repeatedly overcharged the juvenile court, stopping only after an official investigation. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). According to the board, respondent also did not acknowledge the wrongfulness of his conduct, BCGD Proc.Reg. 10(B)(1)(g), because he defended his billing practices by suggesting that his services were worth what he had charged and that he had done

---

1. {¶ a} R.C. 2913.02(A) provides:

{¶ b} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶ c} " * * *

{¶ d} "(3) By deception."

the court a favor by accepting court appointments that few other lawyers would take. Respondent also pointed out that he had no way of realizing that his fees were excessive because no one gave him any instruction or other indication that the fees were improper and the juvenile court judges had routinely allowed them. The board was not persuaded by these defenses, particularly in light of respondent's many years of practicing law in the public sector.

{¶ 14} In mitigation, the board found that respondent had no history of disciplinary sanctions and had cooperated fully in the disciplinary investigation and proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d). Respondent also had a good professional reputation in his community. Finally, respondent consented to a reduction of his fees in later cases, after he had corrected his billing practices, which demonstrates that respondent has acknowledged his errors in billing. BCGD Proc.Reg. 10(B)(2)(c). The board, however, noted that the specific amount and other terms of this arrangement were not disclosed in the record.

{¶ 15} Relator advocated a one-year suspension with six months stayed. Respondent argued that his conduct did not violate any Disciplinary Rules. The board adopted the sanction suggested by relator and accepted by the panel, recommending that respondent be suspended from the practice of law for one year, with the final six months of the suspension period stayed.

## Review

{¶ 16} Respondent now concedes that he violated DR 1–102(A)(6) and 2–106(A). He objects, however, to the finding that he violated DR 1–102(A)(4) and to the board's recommended sanction. Respondent claims that the board misconstrued his defense, equating his claim of lack of deceptive intent with a refusal to acknowledge wrongdoing. Respondent also insists that a one-year suspension with a six-month stay is too severe. We overrule both objections.

*DR 1–102(A)(4)*

{¶ 17} Respondent was acquitted of grand theft because the judge in his criminal case found that the state had failed to prove an intent to deceive. Respondent urges us to reach a similar conclusion, arguing that because he had not hidden the nature and extent of his fee requests from the juvenile court, his billing practices do not constitute a deceptive act. We disagree insofar as the violation of DR 1–102(A)(4) is concerned.

{¶ 18} To collect legal fees, appointed counsel in the Stark County Juvenile Court is expected to file a separate form for each client. Respondent consequently never claimed fees on the same form for representing more than one client at the same time or for more hours than the court was open. Thus, the juvenile court judges, among other officials responsible for approving these fees, had little reason to suspect that respondent was not complying with the explicit

instructions on the forms. The judges and others doubtlessly reviewed respondent's billing practices on a case-by-case basis, which presented too small a picture to reveal respondent's excessive charges. They also doubtlessly trusted that respondent, a seasoned juvenile court practitioner, would not take advantage of the system.

{¶ 19} Respondent now admits that his overbilling was wrong, but he protests that at the time, he had assumed that the practice was condoned by the juvenile court. And yet in billing the county, respondent signed the following certification on each of the 138 fee-request forms: "I certify that I have received no compensation in connection with providing representation in this case other than that described in this motion or which has been approved by the Court in a previous motion, nor have *any fees and expenses been duplicated on any other motion.* I, or an attorney under my supervision, have performed all legal services itemized in this motion." (Emphasis added.) This certification and its self-evident falsity warrant the board's finding that respondent violated DR 1–102(A)(4).

*The Appropriate Sanction*

{¶ 20} Padding client bills with hours not worked is tantamount to misappropriation. *Toledo Bar Assn. v. Batt* (1997), 78 Ohio St.3d 189, 677 N.E.2d 349. And when professional misconduct involves misappropriation, disbarment is the presumptive sanction, although this sanction may be tempered with sufficient evidence of mitigating circumstances. *Dayton Bar Assn. v. Gerren,* 103 Ohio St.3d 21, 2004-Ohio-4110, 812 N.E.2d 1280, ¶ 14.

{¶ 21} Respondent engaged in double billing, which is the practice of "billing of fees and costs to more than one client for the same work or the same hours." Hopkins, Law Firms, Technology, and the Double–Billing Dilemma (1998), 12 Geo.J.Legal Ethics 93, 99. The impropriety of this practice and of charging for services never performed should have been obvious to respondent. *In re Entin* (2001), 287 A.D.2d 943, 944, 732 N.Y.S.2d 648. We are not persuaded, therefore, by respondent's claim that he relied completely on the juvenile court's unknowing acquiescence in his billing practices as approval of the charges.

{¶ 22} By overcharging the juvenile court, respondent exploited an already overburdened system designed to aid the poorest members of our society and lessened public confidence in the legal profession and compromised its integrity. In light of the serious harm caused to the taxpaying public, the judicial system, and the legal profession, an actual suspension of respondents license is required. Thus, in *Cincinnati Bar Assn. v. Nienaber* (1994), 68 Ohio St.3d 459, 628 N.E.2d 1340, we suspended a lawyer's license to practice for six months because, as the court-appointed attorney of an indigent defendant, the lawyer sought reimbursement for vacation and other expenses wholly unrelated to his client's defense.

{¶ 23} *Nienaber* did not involve a violation of DR 1–102(A)(4). There, the lawyer certified the legitimacy of his unclaimable expenses only once and perhaps in reliance on an administrative assistant's erroneous inclusion of these expenses on a voucher. In contrast, respondent has certified the propriety of illegitimate fees on at least 80 separate occasions [2] and not by any conceivable mistake. Respondent instead repeatedly took advantage of what was, in effect, the juvenile court's honor system, rationalizing his overcharges as acceptable to the court.

{¶ 24} This case does not represent an isolated incident of filing false papers, see *Dayton Bar Assn. v. Kinney* (2000), 89 Ohio St.3d 77, 728 N.E.2d 1052, nor is it a situation in which a lawyer stopped a deceitful practice that did not involve lying to a court or client and reported his wrongdoing to appropriate authorities. See *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24. Thus, even after taking into account respondent's reputation and lack of prior discipline, the public interest at stake requires a harsher sanction than a one-year suspension with a six-month stay. See, e.g., *Disciplinary Counsel v. Holzer* (1997), 78 Ohio St.3d 309, 677 N.E.2d 1186 (one-year suspension imposed because an otherwise reputable lawyer on one occasion intentionally charged legal services performed in a city manager's domestic-relations case to the city's general account). The sanction commensurate with respondent's having repeatedly deceived the juvenile court about his legal fees is a one-year suspension of his license to practice law. For this reason, we reject the board's recommendation.

{¶ 25} We adopt the board's findings that respondent violated DR 1–102(A)(4), 1–102(A)(6), and 2–106(A). For this misconduct, respondent is hereby suspended from the practice of law in Ohio for one year. In addition to the other requirements for his reinstatement under Gov.Bar R. V(10), we also order that respondent repay, within one year of our order, all fees that he received as a result of the cases in which he overcharged for his services, in an amount to be determined by relator. Respondent's reinstatement, therefore, is conditioned on his complete restitution, taking into account any amounts he may have already repaid to the county through a reduction in fees, also to be determined by relator.

{¶ 26} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

2. Although the overcharges occurred on 34 days, each day involved at least two and sometimes as many as six improperly charged claims.

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Lane, Alton & Horst, L.L.C., and Alvin E. Mathews Jr., for respondent.