DAYTON BAR ASSOCIATION *v.* ROGERS.

[Cite as *Dayton Bar Assn. v. Rogers,*
116 Ohio St.3d 99, 2007-Ohio-5544.]

(No. 2007–0746—Submitted August 14, 2007—Decided October 24, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Richard Hunter Rogers of Dayton, Ohio, Attorney Registration No. 0017858, was admitted to the Ohio bar in 1974. In 1994, we publicly reprimanded him for violating the following Disciplinary Rules: DR 1–102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Dayton Bar Assn. v. Rogers* (1994), 71 Ohio St.3d 283, 643 N.E.2d 539. In 1999, we imposed a one-year stayed suspension on him for his violation of DR 9–102(A) (requiring a lawyer to maintain client funds in a separate, identifiable bank account). *Dayton Bar Assn. v. Rogers* (1999), 86 Ohio St.3d 25, 711 N.E.2d 222. For the reasons that follow, we conclude that respondent's license to practice law in Ohio should now be suspended for two years as a result of the additional misconduct described below.

{¶ 2} On April 18, 2005, relator, Dayton Bar Association, filed a complaint charging respondent with professional misconduct. Respondent filed an answer to the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held hearings on the complaint in April 2006 and January 2007. The panel then prepared written findings of fact and conclusions of law, which the board adopted, as well as a recommendation, which the board rejected.

## Misconduct

{¶ 3} In July 2000, Roy K. Smith and his wife, Dagmar Smith, of Yellow Springs, Ohio, retained respondent to pursue legal action against the architects and the contractor who had designed and built the Smiths' home. The exterior of that home was covered with a synthetic stucco siding that allowed moisture to enter the home but did not allow it to escape. The trapped moisture had caused the wood under the stucco to rot to the point that it generated a noticeable odor.

{¶ 4} Respondent told the Smiths that he had experience with construction litigation and was familiar with the problems associated with synthetic stucco. The Smiths agreed to pay respondent an hourly rate of $175 for his services. During the three years that respondent worked on the Smiths' case, from 2000 to 2003, he billed them more than $69,000 for his and another attorney's work.

{¶ 5} Respondent filed a lawsuit for the Smiths in the Greene County Court of Common Pleas in March 2001. For work done between April and mid-August of 2001, respondent billed the Smiths more than 20 hours for discovery-related work on the case. In August 2001, respondent engaged the services of attorney Ronald Kozar to assist him with the preparation of discovery demands and responses. The Smiths agreed to pay for Kozar's services at the same $175-per-hour rate that they were paying respondent, and the attorneys agreed that Kozar would send his bills to respondent, who would in turn incorporate them into his own before sending the combined bills to the Smiths for payment.

{¶ 6} In his initial letter to Kozar in August 2001, respondent provided little explanation about the case and none of the discovery-related work product for which the Smiths had already been billed over $3,500. Kozar testified that he "started from scratch" when it came time to respond to the defendants' discovery demands because respondent had no draft responses to give him. Kozar's time records indicate that he spent one hour preparing interrogatory responses in October 2001 and an additional two hours in November 2001. Kozar testified at the disciplinary hearing that respondent did not prepare the interrogatory responses or change the responses that Kozar had drafted. Yet respondent billed the Smiths for at least 12 hours of work that he had allegedly done from August through December 2001 drafting and revising interrogatory responses.

{¶ 7} Respondent acknowledged at the disciplinary hearing that no documents or other records support his claim that he provided drafts of discovery responses to Kozar when Kozar joined the Smiths' litigation team in August 2001. Respondent also testified that he "did not make real substantial changes" to the interrogatory responses that Kozar prepared. In addition, he admitted that he had no evidence to show that he had made any changes at all to those documents even though he had billed the Smiths for working on the interrogatory responses.

{¶ 8} Kozar's time records further indicate that he spent five hours in February 2002 preparing discovery requests that were to be served on the defendants. He testified at the disciplinary hearing that those requests were sent to the defendants just as he had prepared them with no changes by respondent. Respondent nonetheless billed the Smiths for 2.2 hours of his own work, which he described on a client bill as "Finalize and send interrogatories and document requests to all defendants."

{¶ 9} Kozar also testified at the disciplinary hearing that respondent wanted to hire and did hire an expert witness to assist with the Smiths' case. After the defendants took the expert's deposition in May 2002, however, Kozar and respondent agreed that the expert's testimony was not necessary, and Kozar stated at the disciplinary hearing that there was no basis for billing the Smiths after the expert's deposition for any further expert-related expenses. Respondent nonetheless billed the Smiths for 5.5 hours in June and July 2002 for "review" of the deposition and for further discussions with the expert and another person employed by the same company. Kozar testified at the disciplinary hearing that those charges were "unnecessary" and "made absolutely no sense" because "we had already decided we were not going to use" any experts.

{¶ 10} Kozar did not know how much respondent was billing the Smiths for the attorneys' work on the case because Kozar simply sent his time records to respondent, who then incorporated Kozar's time into the bills that respondent sent to the Smiths. Kozar testified at the disciplinary hearing that when he asked to see the bills, respondent was "miffed" and did not want to show them to him. Once Kozar saw the bills, he concluded that respondent had billed for work that Kozar knew respondent had not performed.

{¶ 11} After Kozar questioned the amount that respondent had billed the Smiths, respondent refunded $6,650 to them in 2003. Respondent refunded an additional $11,750 to the Smiths after they retained a new lawyer who accused him of committing fraud, breach of fiduciary duty, and legal malpractice.

{¶ 12} The board found that respondent's actions violated DR 1–102(A)(3), 1–102(A)(4), and 2–106(A) (prohibiting a lawyer from charging or collecting a clearly excessive fee).

## Sanction

{¶ 13} The panel recommended to the board that respondent be suspended for two years, with 12 months stayed. But the board recommends to this court that respondent be suspended for two years with none of the suspension stayed. Respondent filed objections to the board's findings and its recommendation, arguing that relator failed to prove by clear and convincing evidence that any disciplinary violations had occurred, and urging the court to stay any suspension imposed on him.

{¶ 14} We have reviewed the board's report and the record, and we have fully considered respondent's objections and his oral argument. Having done so, we agree with the board that respondent violated the three Disciplinary Rules cited above, and we also adopt the board's recommended sanction.

{¶ 15} Although respondent urges us to rely on the testimony of attorney Ronald Burdge, we do not find Burdge's testimony dispositive on the issues

before us. Burdge testified that he had reviewed respondent's case file regarding the Smith case and found no evidence of excessive billing by respondent. Yet Burdge also explained that he had not discussed the case with Kozar, had not seen or heard any of Kozar's testimony detailing the alleged overbilling by respondent, and could not say who had prepared the discovery requests and responses that he saw in the case file. The panel had the opportunity to see and hear the testimony of Burdge, Kozar, respondent, and other witnesses, and the record contains clear and convincing evidence on which the panel and the board could rightly rely in concluding that respondent had knowingly charged the Smiths for work that he did not do. We agree with the board's findings that respondent "intentionally and fraudulently billed for time that he claims he spent on discovery" for the Smiths and that any work that respondent did do in preparing discovery requests or responses was "superficial at best" and did not justify the amount of time billed. The record also supports the board's finding that respondent "was simply unable to explain" why he charged the Smiths for 5.5 hours for reviewing and discussing an expert's deposition after the decision had been made that no expert would be used by the Smiths.

{¶ 16} In imposing a sanction for attorney misconduct, we consider the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The aggravating factors in this case include respondent's prior disciplinary offenses, his dishonest or selfish motive, his pattern of misconduct over the course of the representation, his refusal to acknowledge the wrongful nature of his misconduct, and the harm suffered by his vulnerable clients, who were retired and living on a fixed income supplemented by part-time employment. BCGD Proc.Reg. 10(B)(1)(a), (b), (c), (g), and (h).

{¶ 17} Mitigating factors identified by the board in this case were that respondent made restitution to his clients and that two attorneys wrote letters attesting to his competence and professionalism. BCGD Proc.Reg. 10(B)(2)(c) and (e).

{¶ 18} After weighing the aggravating and mitigating factors in this case, we agree that a two-year suspension is the appropriate sanction. This is the second disciplinary proceeding in which we have found that respondent engaged in dishonest conduct. In his earlier case involving a DR 1–102(A)(4) violation, we found that he had charged a fictitious consulting fee. *Dayton Bar Assn. v. Rogers,* 71 Ohio St.3d 283, 643 N.E.2d 539. Now in this case, respondent billed clients for work that he did not do and for work that he had no sound reason for doing. Respondent's penchant for stretching the truth in his billing practices calls into doubt his fitness to remain in a profession grounded on candor and

fairness, and our duty to protect the public warrants the sanction recommended by the board. Lawyers should strive to achieve their clients' lawful objectives as expeditiously and economically as possible and should afford clients the same honesty and diligence that they would want and expect if they were seeking professional advice and service themselves.

{¶ 19} The sanction recommended by the board is consistent with our decisions in similar cases. See, e.g., *Cleveland Bar Assn. v. Greenberg*, 112 Ohio St.3d 138, 2006-Ohio-6519, 858 N.E.2d 400 (imposing an 18–month suspension on an attorney who had advanced his own interests at the expense of his clients); *Disciplinary Counsel v. Stollings*, 111 Ohio St.3d 155, 2006-Ohio-5345, 855 N.E.2d 479, ¶ 13 ("A violation of DR 1–102(A)(4) ordinarily calls for the actual suspension of an attorney's license * * * [and an] actual suspension is particularly appropriate when an attorney's dishonesty has been directed toward a client"); *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 20 (imposing a one-year suspension on an attorney with no prior disciplinary record who had double-billed for his services, explaining that "[p]adding client bills with hours not worked is tantamount to misappropriation"); *Toledo Bar Assn. v. Batt* (1997), 78 Ohio St.3d 189, 677 N.E.2d 349 (disbarring an attorney who padded client bills with hours not worked).

{¶ 20} Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Jeffrey D. Slyman, for relator.

Ambrose & Dennis, Ltd., and James T. Ambrose, for respondent.