AKRON BAR ASSOCIATION *v.* WATKINS.

[Cite as *Akron Bar Assn v. Watkins,* 120 Ohio St.3d 307, 2008-Ohio-6144.]

(No. 2008–1174—Submitted August 26, 2008—Decided December 3, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Thomas W. Watkins of Stow, Ohio, Attorney Registration No. 0058702, was admitted to the practice of law in Ohio in 1992. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months and stay the suspension on the condition that he commit no further misconduct, based on findings that he charged a client a clearly excessive fee in violation of DR 2–106(A) and commingled the client's funds with his own in violation of DR 9–102(A). We agree that respondent violated the Code of Professional Responsibility as found by the board and that a stayed six-month suspension is appropriate.

{¶ 2} In April 2007, relator, Akron Bar Association, charged respondent with professional misconduct in overseeing the affairs of a single client. A panel of the board heard the case in October 2007, found misconduct, and recommended the six-month suspension and conditional stay. The board adopted the panel's findings and recommendation.

## I. Misconduct

### A. The DR 2–106(A) Violation

{¶ 3} In June 2002, Irene Radabaugh, a stroke victim who had been recently hospitalized, and her cousin asked respondent to look after Irene's financial affairs. Respondent drafted and Radabaugh executed a power of attorney, making respondent attorney-in-fact over Radabaugh's finances and healthcare, and a revocable living trust, naming himself as trustee. Respondent had never served as a trustee before, but nevertheless agreed to oversee the trust assets, which approximated $198,000.

{¶ 4} According to the parties' stipulations, respondent charged Irene at least $46,294.33 for his services during the 20 months between June 14, 2002, and February 9, 2004, while Radabaugh remained in nursing-home care. The amount of these charges later raised the suspicions of a second lawyer, whom Irene had retained in late June 2004 to sell her home and assist her with some additional estate planning. The second lawyer inquired into the charges, and respondent sent a letter in an attempt to explain them. The letter did little to allay concerns of the second lawyer, who in July 2006 filed a grievance with relator.

{¶ 5} The second lawyer's concerns stemmed from provisions in the living trust that allowed trustee compensation at an hourly rate of $150, but only for "extraordinary" services. Examples of the extraordinary trustee services that respondent performed for Radabaugh included preparing a nursing-home application and ensuring her healthcare insurance coverage. But from respondent's explanatory letter and a checkbook register for the trust during the pertinent 20–month period, the second lawyer saw that respondent had repeatedly charged the extraordinary-fee rate for ordinary services. Most troubling were 137 entries, each for three quarters of an hour at a cost of $112.50, resulting in charges of $15,412.50 for having simply picked up Radabaugh's mail.

{¶ 6} Expert opinion established that respondent had overcharged his client by $28,344.33. Respondent later conceded this mistake. He explained that he had not realized the different compensation rates that might apply to trustee services and as a result had charged the $150 hourly fee regardless of what service he was providing Radabaugh. Respondent added that he had tried to get others to do tasks for her that did not require any particular skill, but that they had left the job to him.

{¶ 7} In October 2007, respondent repaid the $28,344.33 that the parties agreed he owed. Because Radabaugh had died in January 2006, the funds were used to reimburse Medicaid for her care.

{¶ 8} Respondent stipulated and the board found that he had charged excessive fees in administering the Radabaugh living trust and had thereby violated DR 2-106(A). We accept this finding of misconduct.

### B. The DR 9–102(A) Violation

{¶ 9} Respondent received six payments totaling $11,800 from the Radabaugh trust as advances toward his future fees. He did not deposit the unearned fees in his client trust account. Respondent stipulated and the board found that he had thereby commingled funds in violation of DR 9–102. We accept this finding of misconduct.

## II. Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated and sanctions imposed in similar cases. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

### A. Duties Violated and Sanctions in Similar Cases

{¶ 11} We have already discussed respondent's breach of the duties owed under DR 2–106(A) and 9–102(A), both of which protect clients and the legal profession. Here, the board did not follow *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, or *Disciplinary Counsel v. Johnson*, 113 Ohio St.3d 344, 2007-Ohio-2074, 865 N.E.2d 873, finding the misconduct in those cases more egregious than respondent's wrongdoing. We agree.

{¶ 12} The lawyer in *Holland* received a one-year suspension for exploiting the billing practices of a juvenile court, including that the court-appointed lawyer sometimes charged for more daily "in court" hours than the court was open each day. *Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 8. The lawyer in *Johnson* received a one-year suspension, with a six-month conditional stay, for exploiting two elderly and mentally incompetent wards. That lawyer pursued claims of little or no merit and then took advantage of a power of attorney to hide his billable hours from the probate court. *Johnson*, 113 Ohio St.3d 344, 2007-Ohio-2074, 865 N.E.2d 873, ¶ 71. Despite the patent impropriety of these excesses, the lawyers in those two cases also persisted in trying to rationalize their fees as reasonable under the circumstances.

{¶ 13} In contrast, respondent conceded his mistakes, which, according to the panel and board, resulted from his inexperience with trusteeships and desire to

help a longtime family friend. His case thus more closely resembles *Cincinnati Bar Assn. v. Alsfelder*, 103 Ohio St.3d 375, 2004-Ohio-5216, 816 N.E.2d 218, in which we ordered a lawyer's one-year suspension from practice, all stayed on the condition that he pay $30,000 in restitution, because he ill-advisedly charged legal fees for giving friendly advice not related to his client's legal needs. The client in *Alsfelder*, like Radabaugh, exhibited vulnerability; however, both were competent and agreed when their lawyers told them of their charges for mundane services. Id. at ¶ 22 and 25. And though inexperience is no excuse, the fact that the panel and board in both cases credited the lawyers' good intentions has weighed in their favor. Id. at ¶ 32.

### B. Mitigating and Aggravating Factors

{¶ 14} Also weighing in respondent's favor are the mitigating factors that he has no prior disciplinary record, did not act with a dishonest motive, and participated openly and cooperatively in the disciplinary proceeding. See BCGD Proc.Reg. 10(B)(2)(a), (b), and (d). Respondent made restitution within two weeks of receiving relator's notice of the amount owed. As mentioned, respondent has also acknowledged his misconduct and expressed remorse. Moreover, as a former state representative and former law director for the city of Stow, respondent has shown a commitment to public service and established his overall good character and reputation. See BCGD Proc.Reg. 10(B)(2)(e). We do not find any aggravating factors.

### C. Disposition

{¶ 15} We have found respondent in violation of DR 2–106(A) and 9–102(A), compared sanctions in similar cases, and weighed the mitigating and aggravating factors. We order the sanction recommended by the panel and board. Respondent is suspended from the practice of law in Ohio for six months; however, the suspension is stayed on the condition that he commit no further misconduct during that period. If respondent violates the condition of the stay, the stay will be lifted, and he will be ordered to serve the suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Brennan, Mann & Diamond, L.L.C., and John F. Martin; Gibson & Lowry and Sharyl W. Ginther; and John F. Herman, for relator.

Charles E. Grisi, for respondent.