CINCINNATI BAR ASSOCIATION *v*. STRIDSBERG.

[Cite as *Cincinnati Bar Assn. v. Stridsberg,*

123 Ohio St.3d 69, 2009-Ohio-4182.]

*Attorneys — Misconduct — Wrongful fee taken from workers' compensation benefit check respondent knew was overpayment — Excessive fee — Conduct adversely reflecting on fitness to practice law — Six-month suspension, stayed on conditions.*

(No. 2009-0662 — Submitted June 3, 2009 — Decided August 26, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-061.

_____

**Per Curiam.**

{¶ 1} Respondent, Roger C. Stridsberg of Cincinnati, Ohio, Attorney Registration No. 0021277, was admitted to the practice of law in Ohio in 1949. The two violations at issue in this case arose out of respondent's representation of Dawn Haggard concerning two workers' compensation claims. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months, conditionally staying the entire suspension on the condition of restitution to the Bureau of Workers' Compensation ("BWC") in the amount of $2,159.96. We agree that respondent engaged in professional misconduct as found by the board and that a six-month suspension, conditionally stayed, is appropriate.

{¶ 2} Relator, Cincinnati Bar Association, charged respondent in a three-count complaint with violations of the Disciplinary Rules of the Code of Professional Responsibility. The parties filed a stipulation of facts, including a statement of mitigating and aggravating factors and a recommended sanction, and

waived a formal hearing. A panel of board members made findings of fact and conclusions of law and adopted the recommended sanction of the parties, a six-month suspension stayed on conditions.

{¶ 3} The parties have not objected to the board report.

## Misconduct

{¶ 4} In July 2000, respondent filed a motion on Haggard's behalf requesting temporary total disability benefits ("TTD"). On September 1, 2000, a hearing was held on the motion before an Industrial Commission district hearing officer, which resulted in an order allowing TTD for the period December 23, 1998, to January 31, 2000, as well as from February 11, 2000, to June 1, 2000. The order was mailed on September 6, 2000.

{¶ 5} Haggard's employer appealed the September 6, 2000 order. A staff hearing officer modified the order, changing the commencement date of the TTD payments from December 23, 1998, to December 23, 1999. The modified order was mailed on November 3, 2000.

{¶ 6} On October 16, 2000, before the staff hearing officer's order, the BWC issued three checks payable to respondent and Haggard totaling $12,820.85, in the respective amounts of $2,859.52, $8,243.65, and $1,717.68. These checks were based on the district hearing officer's September 6 order, which allowed an extra year of TTD payments.

{¶ 7} Respondent deposited the checks into his trust account, and on October 24, 2000, respondent and Haggard signed a disbursement agreement for one of the checks, in the amount of $2,859.52, resulting in respondent issuing a check for $1,906.35 to Haggard and a check for $953.17 to himself for his contingent fee. The balance of the award paid in the other two checks seemed too high, so they left the remaining two checks deposited in respondent's trust account.

2

**{¶ 8}** On November 4, 2000, respondent received notice of an October 13, 2000 order reducing the compensation previously ordered. Five days later, the BWC mailed a notice of overpayment to respondent and Haggard individually. Respondent received his copy on November 10, 2000. The notice stated that an overpayment of $9,454.44, which represented the extra year of benefits, would be recovered from future payments unless Haggard sent a check to the BWC in the overpayment amount.

**{¶ 9}** The parties stipulated that by November 10, 2000, respondent had been notified of the overpayment and that he was still in possession of those funds in his trust account. However, at his client's insistence, respondent executed a second disbursement agreement with Haggard for the remaining two checks, which totaled $9,961.33. Respondent disbursed $6,640.89 to Haggard and paid himself a contingency fee of $3,320.44. Of that contingency fee, $3,151.48 represented funds resulting from the overpayment.

**{¶ 10}** Before disbursing these amounts, respondent advised Haggard that most of the money was the result of an overpayment and that Haggard would be required to pay that money back to the BWC out of future claim awards, if there were any. Respondent then filed an appeal of the order declaring an overpayment, but the order was affirmed. Haggard discharged respondent in 2001 and hired new counsel.

**{¶ 11}** In the fall of 2007, unable to contact respondent, Haggard contacted relator, the Cincinnati Bar Association, because the BWC was withholding 40 percent from each payment she was receiving in order to recoup the overpayment. Relator contacted respondent regarding the fee he took from the second disbursement, and in response, respondent issued a check in the amount of $991.52 as partial reimbursement to Haggard through her new counsel. He also deposited sufficient funds in the trust account in anticipation of repaying

his client or the BWC the balance of the fee he took out of the second disbursement.

{¶ 12} The issue before the panel was the appropriateness of the second contingency fee that respondent took from the overpayment with knowledge that it was an overpayment. The board found, by clear and convincing evidence, that respondent violated both DR 1-102(A)(6) (conduct adversely reflecting on the lawyer's fitness to practice law) and 2-106(A) (charging an excessive fee). We accept these findings of misconduct.

### Recommended Sanction

{¶ 13} In determining the recommended sanction for respondent's misconduct, the board considered the aggravating and mitigating factors set forth in BCGD Proc.Reg. 10. The parties stipulated and the board found that respondent (1) refused to acknowledge the wrongful nature of his conduct and (2) failed to make timely full reimbursement to his client or to the BWC of the wrongfully taken fee.

{¶ 14} In addition, the parties stipulated and the board found that respondent (1) had no prior disciplinary history, (2) had made full and free disclosure to the board and was cooperative in the investigation process, (3) issued a check in the amount of $991.52 as partial reimbursement to Haggard through her new counsel, after being contacted by relator, and (4) when it became apparent that the check for $991.52 to Haggard had not been cashed, respondent deposited money into his trust account in anticipation of issuing a check to Haggard and/or to the BWC to repay his share of the overpayment.

{¶ 15} Both parties and the board recommended that respondent be suspended from the practice of law for a period of six months with the entire six months stayed on the conditions that respondent pay the BWC the balance of the wrongfully taken fee ($2,159.96) and commit no further misconduct. In recommending the sanction, the panel noted that it had reviewed *Akron Bar Assn.*

4

*v. Watkins*, 120 Ohio St.3d 307, 2008-Ohio-6144, 898 N.E.2d 946. The respondent in that case charged a clearly excessive fee while acting as the trustee of a client's revocable living trust by, for example, charging his client a total of $15,412.50 over a 20-month period for periodically picking up her mail. He was suspended by the court for six months, all stayed on the condition that he commit no further misconduct.

### Review

{¶ 16} We accept the findings of the board and adopt its recommended sanction. Respondent is hereby suspended from the practice of law in Ohio for six months. The entire suspension is stayed on the conditions that he pay restitution to the BWC in the amount of $2,159.96 within 30 days and that he commit no further misconduct. If respondent fails to comply with the terms of the stay, the stay will be lifted, and respondent will serve the entire six-month suspension from the practice of law. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jarrod M. Mohler and Rosemary D. Welsh, for relator.

Andrew S. Adams, for respondent.

_____