OHIO STATE BAR ASSOCIATION *v.* WEAVER.

(D. D. No. 74-9—Decided February 5, 1975.)

*Mr. T. D. McDonald, Mr. James S. Patrick, Mr. Charles J. Tyburski, Mr. John R. Welch* and *Mr. Albert L. Bell,* for relator.

*Mr. Richard E. Wright* and *Mr. Gary Pizzedaz,* for respondent.

*Per Curiam.*

## I

The respondent has stipulated to much of what appears in relator's complaint.

As to count one, the parties have stipulated that, in April 1971, respondent was employed by John H. Ford, to represent Ford in the administration of the estate of Laura M. Redman. Ford delivered to respondent certain property belonging to the decedent, including $166 in cash and the passbook to a savings account in decedent's name containing $10,082.70. From May through September 1971, and without authority or appointment as such, respondent represented himself as trustee of the Redman estate, and withdrew the balance of the decedent's savings account. With the exception of a $1,237.99 payment for the decedent's funeral expenses, and the payment of some $900 for claims against the estate, respondent converted the balance of those funds to his own use.

In September 1972, Ford delivered to respondent a certified check for $2,152.01, the proceeds of a second savings account held by decedent. Respondent thereafter obtained payment of the check, and converted the funds to his own use.

In October 1973, respondent reimbursed the estate of Laura Redman in the amount of $10,250.76.

As to count two, the parties have stipulated that, in January 1971, respondent was employed by James N. Kidd and Ethel E. Kidd, to represent them in the matter of the guardianship of the person and estate of Alfred T. Morris, an incompetent person. On February 22, 1971, respondent obtained appointment of the Kidds as guardians.

In September 1971, respondent sold at private sale certain real estate belonging to the ward, accepting in return a check for $2,500 payable to respondent as trustee. Respondent subsequently endorsed the check as trustee, obtained payment, and converted the funds to his own use. Respondent did not deliver said funds to the guardians until November 1973.

As to count three, the parties have stipulated that, in January 1969, respondent was appointed administrator of the estate of Myrtle M. Rector. On May 14, 1971, an inventory was approved, showing real and personal assets of $8,530, including $3,130 in cash. In April 1972, the real property was transferred to the heirs.

On April 3, 1973, respondent was ordered by the court to account for his trust. When he failed to comply, respondent was removed as administrator, and a citation issued to show cause why respondent should not be held in contempt of court. A hearing was set for October 23, 1973.

On October 20, 1973, respondent submitted to the court a check drawn on his attorney-trustee account, for $2,579.53, as the amount due from respondent to the estate. On the same date, respondent deposited $15,000 in his attorney-trustee account, the previous balance having been $34.04. On October 23, 1973, respondent filed his account with the Probate Court.

As to counts four through ten, the relator alleges, and examination of the record confirms, that respondent neglected legal matters entrusted to him, failed to observe the statutory law with respect to the administration of decedents' estates and fiduciary accounts, and failed to account for trust property coming into his possession or control.

Based upon the foregoing, the board found that "respondent converted funds in the first three counts and was negligent in failing to file accounts and closing the guardianships and estates in the other counts." The board found further that respondent was guilty of violating Canon 1, D. R. 1-102(A)(4), (5) and (6); Canon 6, D. R. 6-101(A)(3); and Canon 9, D. R. 9-102(A) and (B)(1), (3) and (4) on the first three counts and guilty of violating former Canons 29 and 32 of the Canons of Professional Ethics, D. R. 6-101(A)(3) on the remaining seven counts, and thereby guilty of misconduct as defined in Gov. R. V (5)(a).

## II

Although respondent has stipulated that he converted funds coming into his possession in his capacity as a fiduciary, he nevertheless asserts that, because he was acquitted following trial on a criminal indictment, he cannot be subject to a subsequent disciplinary proceeding arising out of the same conduct.

Such a contention is without merit. The doctrine of *res judicata* renders final judgments conclusive only when subsequent actions involve the same parties, or those in

privity with them, as in the first action; when the issues to which the evidence is directed are identical in both actions; and when the quantum of proof necessary to render both the original and subsequent judgments is identical.

Clearly, the doctrine does not apply with respect to the present proceeding. The Supreme Court of New Jersey, in *In re Pennica* (1962), 36 N. J. 401, 177 A. 2d 721, states, at page 418, that:

"* * * Not only are the parties different but the purposes of the two proceedings are different. In the disciplinary matter, the primary purpose is not to punish an offender; it is to protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client; it is to ascertain whether the conduct of the attorney involved has demonstrated his unfitness to practice law, and if so to deprive him of his previously acquired privilege to serve as an officer of the court. * * * Moreover, the *quantum* of proof required to warrant discipline or disbarment is different from that demanded for conviction of a criminal charge. The proceeding is not criminal in character; it is *sui generis*, stemming from the inherent power of the court to regulate the practice of law and the admission of persons to engage in that practice * * *." See, also, annotation, 123 A. L. R. 779, 780 *et seq.*, and Supplemental Decisions.

An attorney's conduct need not be criminal to subject him to disciplinary procedures. The court's purpose in a proceeding of this type is not to enforce the criminal code, but rather to investigate the conduct and fitness of one of its officers. These proceedings are neither civil nor criminal; they are instituted to safeguard the courts and to protect the public from the misconduct of those who are licensed to practice law.

We conclude that respondent's misconduct requires his disbarment, and it is so ordered.

*Judgment accordingly.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.