STARK COUNTY BAR ASSOCIATION *v.* MAROSAN.

[Cite as *Stark Cty. Bar Assn. v. Marosan,*
119 Ohio St.3d 113, 2008-Ohio-3882.]

(No. 2008–0399—Submitted April 9, 2008—Decided August 7, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Joseph E. Marosan of North Royalton, Ohio, Attorney Registration No. 0025849, was admitted to the Ohio bar in 1984. On October 26, 2005, we suspended respondent from the practice of law for two years, with 18 months stayed, for neglecting clients' legal matters, failing to maintain a client trust account, and failing to cooperate in the ensuing disciplinary investigation. *Stark Cty. Bar Assn. v. Marosan*, 106 Ohio St.3d 430, 2005-Ohio-5412, 835 N.E.2d 718. Respondent, however, failed to comply with our order of suspension, and on March 7, 2006, we revoked the previously imposed stay and ordered respondent to serve the entire two-year suspension. *Stark Cty. Bar Assn. v. Marosan*, 108 Ohio St.3d 1220, 2006-Ohio-1505, 844 N.E.2d 846.

{¶ 2} On June 21, 2006, we disciplined respondent yet again for misconduct that included neglect of a legal matter, failure to seek a client's lawful objectives, failure to carry out an employment contract, failure to maintain client funds in separate accounts, failure to promptly pay client funds, failure to notify a client of insufficient professional liability insurance, and failure to cooperate in the disciplinary investigation. Accordingly, we suspended respondent for six months, the suspension to be served consecutively to the previously imposed two-year suspension. *Cuyahoga Cty. Bar Assn. v. Marosan*, 109 Ohio St.3d 439, 2006-Ohio-2816, 848 N.E.2d 837.

{¶ 3} In October 2007, relator, Stark County Bar Association, filed a complaint charging respondent with additional violations of the Code of Professional Responsibility and the Rules of Professional Conduct. Respondent failed to answer the complaint, and pursuant to Gov.Bar R. V(6)(F), relator moved for default. The motion was referred to a master commissioner, who made findings of fact and conclusions of law and a recommendation. The Board of Commissioners on Grievances and Discipline adopted the master commissioner's findings. The board rejected the master commissioner's recommended sanction of an indefinite suspension and instead recommended that respondent be permanently disbarred.

{¶ 4} We adopt the board's findings of misconduct, and we agree with the board that respondent should be permanently disbarred.

### Misconduct

*3M Land Trust*

{¶ 5} Beginning in February 2003, respondent represented Vernon R. Martin II and his wholly owned companies, Vern Martin Consulting, Inc., and Old

Monarch, L.L.C. In the summer of 2003, respondent encouraged Martin to join a real estate trust that respondent was creating. In September 2003, respondent formed a real estate trust that had three partners or "beneficiaries": respondent, Martin, and another of respondent's clients, Paul Miller. Respondent named himself the trustee and was also the attorney representing the trust. During this time, respondent continued to act as Martin's attorney. At no time did respondent advise Martin of the risks attendant to this dual representation or suggest that Martin seek separate counsel regarding the trust.

{¶ 6} The real estate trust was called the "3M Land Trust," and the purpose of the trust was to purchase and rehabilitate property and resell it at a profit, with the profits to be shared equally among the three partners. Martin was expected to provide the capital for the purchase of the properties, respondent was to do the legal work, and Miller was to contribute property-management and building expertise.

{¶ 7} In January 2004, Martin transferred more than $114,000 to respondent to buy property in Pennsylvania on behalf of the 3M Land Trust. In August 2004, one of the three parcels of the Pennsylvania property was sold for approximately $90,000. Half of those proceeds was applied to debt repayment, while the remainder was divided equally among respondent, Martin, and Miller, with each receiving $16,000. Martin applied his share toward the remaining debt on the property. The payment of $16,000 each to respondent and Miller—neither of whom had contributed any capital to the purchase—was characterized by respondent as an advance on future expected profits.

{¶ 8} In December 2004, an auction was held on the remaining two parcels, but the offer received was not enough to retire the remaining debt on the property. Because Martin was the only person making debt payments, he wanted to accept the auction offer to reduce the debt by any extent possible. Respondent and Miller, however, did not want to accept the proceeds of the auction, so Martin reluctantly agreed that the trust would retain the property.

{¶ 9} In October 2006, the remaining two parcels were sold. During the life of the investment, Martin paid interest on the money he had borrowed to make the original investment in the Pennsylvania property and also paid additional accounting and insurance costs that the 3M Land Trust had incurred. The sale of all three parcels resulted in a $15,000 profit over Martin's initial investment and advanced expenses. According to the terms of the 3M Land Trust agreement, each of the three beneficiaries should have been obligated to return $11,000 of the $16,000 received from the sale of the first parcel. However, neither respondent nor Miller reimbursed Martin for the excess distributions that they had taken. Instead of receiving one-third of the profits, Martin was the only one of the three beneficiaries of the 3M Land Trust who lost money on the Pennsylvania property.

{¶ 10} With respect to the above misconduct that allowed respondent to profit at the expense of Martin, the board found that respondent had violated DR 5–104(A) (prohibiting a lawyer from entering into a business transaction with a client if they have differing interests and if the client expects the lawyer to exercise his professional judgment for protection of the client, unless the client has consented after full disclosure).

*Failure to Cooperate in Disciplinary Investigation*

{¶ 11} On December 29, 2006, relator notified respondent by letter that Martin had filed a grievance and requested a response within 21 days. Relator's investigator sent another letter to respondent on January 2, 2007, regarding the Martin grievance. No response was received from either letter, so relator sent a certified letter on January 18, 2007, requesting that respondent contact the investigator. Respondent signed the return receipt, but he failed to respond or otherwise cooperate in the investigation of the Martin grievance.

{¶ 12} On August 31, 2007, relator sent respondent a copy of a proposed complaint by certified mail. Respondent signed the certified return receipt but failed to respond. Respondent was also served with the formal complaint on October 11, 2007, but he did not file an answer.

{¶ 13} By ignoring relator's investigative inquiries and failing to file an answer to the complaint, the board found that respondent had violated Gov.Bar R. V(4)(G) and Prof.Cond.R. 8.1(b) (both requiring a lawyer to cooperate in a disciplinary investigation).[1]

Recommended Sanction

{¶ 14} In recommending a sanction, the board considered the following aggravating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board noted that respondent had previously been disciplined on two separate occasions and is currently under suspension. BCGD Proc.Reg. 10(B)(1)(a). The board also found that respondent had acted with a dishonest or selfish motive and had failed to cooperate in the disciplinary process. BCGD Proc.Reg. 10(B)(1)(b) and (e). The board further noted the vulnerability and resulting harm to the victim of respondent's misconduct and respondent's failure to make restitution. BCGD Proc.Reg. 10(B)(1)(h) and (i). No mitigating factors were found. See BCGD Proc.Reg. 10(B)(2).

---

1. Because respondent's failure to cooperate occurred prior to and after the adoption of the Rules of Professional Conduct on February 1, 2007, he was charged under the applicable rule of both the former Code of Professional Responsibility and the current rule.

{¶ 15} Relator recommended that respondent be permanently disbarred. The master commissioner recommended that respondent be indefinitely suspended from the practice of law. The board recommended permanent disbarment.

### Review

{¶ 16} Respondent does not challenge the board's findings of misconduct or the recommended sanction. We have reviewed the board's record and its report, and we agree that respondent violated DR 5–104(A), Gov.Bar R. V(4)(G), and Prof. Cond.R. 8.1(b).

{¶ 17} We also accept the board's recommendation that respondent be permanently disbarred. Our primary purpose in imposing disciplinary sanctions is not to punish the offender, but to protect the public. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53, citing *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 100, 70 O.O.2d 175, 322 N.E.2d 665. Respondent engaged in self-dealing and profited at the expense of a client whose interests he had a professional duty to protect. Respondent also knowingly violated his duties to the legal profession and the public by refusing to cooperate in the disciplinary process. And respondent has offered no mitigating evidence that would warrant a lesser sanction. Moreover, we have already sanctioned respondent twice for violating his professional and ethical duties. Respondent's conduct in this matter—and in his previous disciplinary cases—demonstrates that he is not fit to practice law.

{¶ 18} Accordingly, respondent is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———

Richard S. Milligan and G. Ian Crawford, for relator.