**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Rodgers*, Slip Opinion No. 2020-Ohio-770.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-770

IN RE APPLICATION OF RODGERS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Rodgers*, Slip Opinion No. 2020-Ohio-770.]**

*Attorneys—Character and fitness—Pending application to take the bar exam approved—Applicant may sit for the July 2020 bar exam, provided she satisfies the remaining registration requirements.*

(No. 2019-1094—Submitted January 28, 2020—Decided March 5, 2020.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 696.

————————————

**Per Curiam.**

{¶ 1} Applicant, Cynthia Marie Rodgers, of Dresden, Ohio, is a 2019 graduate of Capital University Law School.  Rodgers applied to register as a candidate for admission to the Ohio bar and to take the July 2019 bar exam.

{¶ 2} Two members of the Muskingum County Bar Association admissions committee interviewed Rodgers in July 2017, and the committee issued a preliminary report recommending that her character and fitness be approved. The Board of Commissioners on Character and Fitness, however, invoked its authority to investigate her character, fitness, and moral qualifications sua sponte. *See* Gov.Bar R. I(10)(B)(2)(e).

{¶ 3} Following a hearing, the board issued a report recommending that we disapprove Rodgers's pending application on the ground that she has failed to establish that she currently possesses the requisite character, fitness, and moral qualifications to practice law in this state and that we permit her to reapply for the July 2024 bar exam. In support of that recommendation, the board cites Rodgers's default on several consumer debts, the nearly $900,000 in student-loan debt that she and her husband have amassed in the pursuit of multiple degrees, and her personal involvement in nearly 60 civil proceedings—in some of which it appears that she engaged in the unauthorized practice of law. At oral argument, Rodgers informed the court that after the board issued its report and recommendation, she reported her actions to the Board on the Unauthorized Practice of Law.

{¶ 4} Rodgers objects to the board's findings that she neglected her financial responsibilities, abused the legal process, and demonstrated an ongoing lack of integrity on the grounds that (1) her default on several consumer debts occurred more than 15 years ago, (2) her student-loan debt, while significant, is not in default, and (3) her past litigation, most of which occurred before she attended law school, does not accurately reflect her current character, fitness, or moral qualifications to practice law. She contends that she has been honest about her debts, has abided by the terms of her student-loan repayment plan for nearly 20 years, and has become more circumspect about pursuing litigation since she enrolled in law school. She therefore urges this court to find that she has carried

her burden of establishing that she currently possesses the requisite character, fitness, and moral qualifications for approval of her pending bar-exam application.

{¶ 5} For the reasons that follow, we sustain Rodgers's objections to the board's report and find that she has established by clear and convincing evidence that she currently possesses the requisite character, fitness, and moral qualifications required for admission to the practice of law. We therefore approve Rodgers's pending application and permit her to sit for the July 2020 bar exam.

**Findings and Analysis**

{¶ 6} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). And "[a] record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Gov.Bar R. I(11)(D)(3).

{¶ 7} Gov.Bar R. I(11)(D) lists factors that are to be considered in determining an applicant's qualifications. Among those factors are the commission of an act constituting the unauthorized practice of law, the abuse of the legal process, and the neglect of financial responsibilities. *See* Gov.Bar R. I(11)(D)(3)(c), (j), and (k). The rule further directs the admissions committee to consider additional factors—including the recency and seriousness of the conduct, the factors underlying the conduct, the evidence of rehabilitation, and the candor of the applicant in the admissions process—in assigning weight and significance to the applicant's prior conduct. *See* Gov.Bar R. I(11)(D)(4)(b), (d), (e), (g), and (i).

*Consumer Debt and Student-Loan Debt*

{¶ 8} The board acknowledged that Rodgers appeared to be timely servicing all of her current debts, with the exception of one disputed debt regarding

a defective computer. It concluded, however, that Rodgers had openly neglected her financial responsibilities by failing to pay several consumer debts in the past and knowingly incurring a substantial amount of student-loan debt that she will probably never be able to fully repay. The board found that Rodgers owed money to Elder-Beerman, JCPenney, and Lowe's but that the debts had apparently "gone away" due to age because they no longer appeared on her credit report. On her registration application, Rodgers disclosed that she had defaulted on $500 debts to JCPenney in 1988 and Elder-Beerman in 2005 and that the credit-card issuer for Lowe's had taken a $1,400 judgment against her in April 2000. She had no record of whether those debts were paid, and her only explanation for the default was that she could not keep up with her payments. Rodgers testified that when she contacted the creditors to inquire about the status of the accounts, she was informed that they had no records of the debts.

{¶ 9} The board also expressed significant concerns regarding the nearly $900,000 of student-loan debt that Rodgers and her husband have incurred and her acknowledgment that they would never be able to repay the entire amount that they owed.[1]

{¶ 10} In *In re Application of Griffin*, 128 Ohio St.3d 300, 2011-Ohio-20, 943 N.E.2d 1008, ¶ 4, 6, we found that an applicant failed to prove that he possessed the requisite character, fitness, and moral qualifications for admission to the practice of law based in part on his student-loan debt of approximately $170,000. But the applicant's loans and an additional $16,500 in credit-card debt had been in default for more than a year, and the applicant had no plan or ability to pay those debts. Although we disapproved the applicant's pending bar-exam application, we

---

1. According to Rodgers's April 14, 2019 credit report, the original balance of the consolidated loans was $339,540, but under the income-contingent repayment plan, that amount had ballooned to $884,403 by March 31, 2019.

permitted the applicant to reapply for the exam to be administered one year after the exam he originally sought to take. *Id.* at ¶ 4, 6.

{¶ 11} In contrast to Griffin, Rodgers testified that after she became disabled in 2001, she and her husband consolidated their student loans and entered into a 25-year income-contingent repayment plan. She explained that pursuant to that plan, they were required to pay a percentage of their income above $20,000 for 25 years and that any amount that remained unpaid after that time would be forgiven. She stated that at the time of her character and fitness hearing, their payment was zero because their income was so low and that they had approximately six years left before the remaining balance was forgiven. Although Rodgers had no idea how much she had borrowed to attend law school, or the total amount of her student-loan debt,[2] she understood that even if the previously consolidated student loans were forgiven in the next five or six years, she would likely be paying 10 to 15 percent of her income toward her law-school loans for the rest of her life.

{¶ 12} Given the current status of Rodgers's credit report, the candid disclosure of her default on several consumer debts—the most recent of which occurred more than 15 years ago—and her compliance with the terms of her student-loan repayment plan, we cannot agree with the board's assessment that Rodgers has neglected her financial responsibilities. On the contrary, it appears that she is currently meeting all of her financial obligations with the exception of the one disputed consumer debt mentioned above and that she has taken full advantage of the opportunities that the federal-student-loan program has made available to further her educational goals.

*Litigation History*

{¶ 13} Rodgers has been a litigant in many administrative and legal proceedings in her lifetime, but the record shows that much of her litigation was

---

2. Rodgers's April 14, 2019 credit report lists a May 2018 student loan with an initial balance of $39,370 in deferred-payment status.

rooted in personal tragedy and financial hardships and was genuinely intended to right wrongs—some actual and some perceived—rather than to harm or annoy others.

**{¶ 14}** Rodgers has candidly disclosed each of her civil matters, beginning with a dispute over her own custody in 1965. The subject matter of Rodgers's actions and her success in pursuing them varied widely. For example, she pursued pro se two claims of alleged medical malpractice—one following surgery to repair injuries Rodgers sustained in a tree-cutting accident that left her disabled and another for undiagnosed injuries following a motor-vehicle accident—but they were dismissed when she could not obtain the required affidavits of merit.

**{¶ 15}** Rodgers also retained counsel to file a wrongful-death action after one of her brothers was killed in a mobile-home fire and to pursue a claim for underinsured-motorist coverage on behalf of her father's estate after her sister died in a car accident—but neither of those claims was successful.

**{¶ 16}** Rodgers obtained guardianship over a brother who was unable to care for himself. She also attempted to obtain guardianship over her niece—the daughter of her deceased brother—albeit in the wrong jurisdiction. But she later sought and obtained legal visitation with that niece and reported that she had exercised that right for approximately seven years at the time of her character and fitness hearing.

**{¶ 17}** Perhaps the most problematic of Rodgers's cases are nearly 20 actions, from 2002 through 2010, in which she filed complaints, counterclaims, or appeals in her capacity as the administrator of her father's probate estate. Many of those actions arose from a contentious dispute with her uncle regarding ownership of the family farm and were repetitive and frivolous. And because Rodgers filed several of them herself, it is evident that she engaged in the unauthorized practice of law. *See* Gov.Bar R. VII(2)(A)(1) (defining the unauthorized practice of law as the "rendering of legal services for another by any person not admitted to the

6

practice in Ohio under Rule I of the Supreme Court Rules for the Government of the Bar" except in certain circumstances not applicable here); *see also Mahoning Cty. Bar Assn. v. Alexander*, 79 Ohio St.3d 1220, 681 N.E.2d 934 (1997) (holding that an individual who is not licensed to practice law in this state but who institutes legal proceedings or appears in court as the trustee for a trust engages in the unauthorized practice of law).

{¶ 18} However, it has been nearly ten years since Rodgers filed the last of the claims related to her father's estate. At her character and fitness hearing, Rodgers admitted that she was too emotionally involved in those cases and that although she did not know what she was doing when she filed them, she felt "something needed to be done" to correct an injustice. She filed many of the cases herself because she could not afford to hire an attorney.

{¶ 19} Rodgers noted that most of her litigation occurred before she went to law school, and she testified that attending law school has changed her. She now recognizes the errors in her past judgment—though she honestly believed she was doing the right thing at the time.

{¶ 20} While in law school, Rodgers practiced law in a supervised setting through the Capital University Law School Legal Clinic and Southeastern Ohio Legal Aid and learned how to properly investigate and present legal claims. She has submitted letters from the director and the supervising clinical professor of the legal clinic, who both report that Rodgers conducted thorough research, demonstrated strong analytical abilities, effectively communicated and negotiated with opposing counsel, wrote and successfully argued pretrial motions, and performed exceedingly well under pressure. Another professor characterized her as "one of the best students in the Capital Legal Clinic." Although it appears that just one of those professors had some knowledge of Rodgers's litigious past, we have no reason to doubt that their letters present an accurate assessment of her current abilities as a law-school graduate.

**{¶ 21}** Rodgers's actions since enrolling in law school demonstrate that she has learned to exercise good judgment and has developed a healthy respect for the legal process. She filed two lawsuits while in law school. The first—a small-claims action for property damage that occurred when her car was towed—settled for $250. And the second—a claim against an attorney for unpaid paralegal wages—was filed by counsel. Although the defendant in that action sought to have Rodgers declared a vexatious litigator, he ultimately dismissed that complaint and settled Rodgers's claim for $16,500.

**{¶ 22}** As the board acknowledged, Rodgers's record in law school, particularly her participation in the legal clinic, shows that she has the ability to help others and that she will be able to draw on her past experience to the benefit of her future clients.

**Conclusion**

**{¶ 23}** Based upon the foregoing, we find that Rodgers has carried her burden of proving by clear and convincing evidence that she currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio. We therefore approve Rodgers's pending application and permit her to sit for the July 2020 bar exam, provided that she satisfies the remaining registration requirements.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, DONNELLY, and STEWART, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

FISCHER, J., dissents, with an opinion.

_____

**FISCHER, J., dissenting.**

**{¶ 24}** I respectfully dissent. Because I conclude that applicant, Cynthia Marie Rodgers, has failed to establish by clear and convincing evidence that she is currently fit for admission to the practice of law, I would disapprove her pending

application to register as a candidate for admission to the Ohio bar but would permit her to reapply for the July 2024 bar exam.

{¶ 25} Pursuant to Gov.Bar R. I(11)(D)(1), an applicant "has the burden to prove by *clear and convincing evidence* that the applicant possesses the requisite character, *fitness*, and moral qualifications for admission to the practice of law." (Emphasis added.) An applicant may be approved "if the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). The Rules for the Government of the Bar of Ohio make it clear that "[a] record manifesting a significant deficiency in the * * * diligence[] or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.* In making its determination, an admissions committee must carefully consider the applicant's "[n]eglect of financial responsibilities." Gov.Bar R. I(11)(D)(3)(k).

{¶ 26} As explained in the majority opinion, in recommending that we disapprove Rodgers's pending application, the Board of Commissioners on Character and Fitness expressed significant concerns regarding the nearly $900,000 of student-loan debt that Rodgers and her husband have incurred as well as her acknowledgment that she and her husband would never repay the entire amount they owe. I share these concerns.

{¶ 27} In *In re Application of Griffin*, 128 Ohio St.3d 300, 2011-Ohio-20, 943 N.E.2d 1008, this court disapproved an applicant's pending application after concluding that the applicant had neglected his personal financial obligations. *Id.* at ¶ 9-10. The applicant owed approximately $170,000 in student loans and had also incurred approximately $16,500 in credit-card debt. *Id.* at ¶ 4. The board accepted the panel's conclusion that the applicant had no plan or ability to pay his debts. *Id.* at ¶ 6. We agreed and concluded that the applicant had neglected his personal financial obligations by failing to seek full-time employment, which

would have given him a better opportunity to address his financial obligations. *Id.* at ¶ 9.

{¶ 28} In the majority opinion in this case, *Griffin* is distinguished on the basis that Rodgers is currently meeting her financial obligations, with the exception of one disputed consumer debt, and has taken full advantage of the opportunities that the federal-student-loan program has made available. I do not agree that this distinction is dispositive.

{¶ 29} It is true that, unlike Griffin, who failed to make any payments toward his student-loan debt and was unable to meet his credit-card obligations, Rodgers is currently meeting her student-loan obligations under an income-contingent repayment plan (although it should be noted that Rodgers had no repayment obligation under that plan at the time of her character-and-fitness hearing). Rodgers, however, is responsible for more than five times the amount of student-loan debt than that for which Griffin was responsible. .

{¶ 30} Moreover, as explained in the majority opinion, Rodgers also has a history of neglecting her financial responsibilities that was not present in *Griffin*. While it appears that those debts no longer appear on her credit reports and that many of Rodgers's creditors have ceased pursuing her outstanding debts due to the age of those obligations, the fact remains that Rodgers has engaged in a pattern of taking on more debt than she has the ability to repay. In light of this history, it is particularly troubling that Rodgers, as the majority opinion acknowledges, "had no idea how much she had borrowed to attend law school, or the total amount of her student loan debt." Majority opinion at ¶ 11.

{¶ 31} In keeping with Rodgers's pattern of assuming debt that she is unable to repay, she has taken on a significant amount of student loans without a plan for how she will repay those loans. This record of conduct does not justify the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them, *see* Gov.Bar R. I(11)(D)(3), but instead manifests a significant

deficiency in Rodgers's diligence and reliability in regard to her financial responsibilities.

{¶ 32} Pursuant to Gov.Bar R. I(11)(D)(1), it is Rodgers's burden to prove by clear and convincing evidence that she possesses the requisite character, fitness, and moral qualifications for admission to the practice of law. How can she possess the requisite fitness for admission to the practice of law when she has demonstrated a pattern of neglecting financial responsibilities, which has culminated in her being responsible for approximately $900,000 in student loans without any intention to repay those loans?

{¶ 33} Rodgers's lack of diligence in keeping track of her student-loan obligations and her acknowledgment that she will never be able to repay those loans indicates that she believes that those debts are not her problem and that she is relying on someone else (most likely, in this case, the taxpayers) to take care of her debts for her. If this is how she handles her own financial responsibilities, how will she handle her clients' financial issues?

{¶ 34} In my view, a lawyer's ability to competently handle issues related to a client's finances is of paramount importance. This court has stated, for instance, that "[t]he mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses *an area of the gravest concern* of this court in reviewing claimed attorney misconduct." (Emphasis added.) *Columbus Bar Assn. v. Thompson*, 69 Ohio St.2d 667, 669, 433 N.E.2d 602 (1982). Rogers has failed to show by clear and convincing evidence that she is fit to handle either her own financial obligations or those of her potential clients.

{¶ 35} This court has a duty " 'to protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client.' " *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975), quoting *In re Pennica*, 36 N.J. 401, 418-419, 177 A.2d 721 (1962). In light of this duty to protect the public, I would accept the

recommendation of the board in this case and conclude that because Rodgers has failed to establish by clear and convincing evidence that she possesses the requisite fitness for admission to the practice of law, her pending application to register as a candidate for admission to the Ohio bar should be disapproved. While I would disapprove her application at this time, I would permit her to reapply for the July 2024 bar exam in order to give her the opportunity to show that she has addressed her pattern of financial neglect and demonstrated her fitness for admission to the practice of law.

_____

Cynthia Marie Rodgers, pro se.

Allen & Baughman and Jillian B. Von Gunten, for the Muskingum County Bar Association.

_____