**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Whipple*, **Slip Opinion No. 2022-Ohio-510.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-510

CLEVELAND METROPOLITAN BAR ASSOCIATION *v*. WHIPPLE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Whipple*, Slip Opinion No. 2022-Ohio-510.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including filing a frivolous motion, filing a motion containing threats of criminal and professional-misconduct charges for the sole purpose of obtaining an advantage in a civil matter, and engaging in conduct prejudicial to the administration of justice—One-year suspension with six months conditionally stayed.*

(No. 2021-0229—Submitted September 7, 2021—Decided February 24, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-013.

————————

**Per Curiam.**

{¶ 1} Respondent, Douglas Paul Whipple, of University Heights, Ohio, Attorney Registration No. 0025754, was admitted to the practice of law in Ohio in 1980.

{¶ 2} In a March 2020 complaint, relator, Cleveland Metropolitan Bar Association, charged Whipple with professional misconduct arising from his filing of a motion in a civil case requesting that the court refer his opposing counsel to the Ohio Lawyers Assistance Program ("OLAP"). In that motion, Whipple alleged that opposing counsel's performance as a lawyer was impaired by a mental or emotional condition or some other condition and sought dismissal of the underlying civil case.

{¶ 3} The parties in this case submitted some stipulations of fact, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. After the hearing, the panel unanimously dismissed one of the alleged rule violations. However, the panel found that Whipple's motion contained threats of criminal and professional-misconduct charges for the sole purpose of obtaining an advantage in a civil matter. It also found that he filed a frivolous motion, violated or attempted to violate the professional-conduct rules, and engaged in conduct that was prejudicial to the administration of justice. The panel recommended that Whipple be suspended from the practice of law for one year with six months conditionally stayed. The board adopted the panel's report and recommendation in its entirety.

{¶ 4} Whipple objects to the board's findings of misconduct and argues that the record does not support the imposition of a sanction any greater than a public reprimand. For the reasons that follow, we overrule Whipple's objections and adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Background of the Seeley litigation*

{¶ 5} Glenn Seeley was Whipple's friend and former colleague. In 2010, Glenn executed a durable power of attorney and a durable power of attorney for healthcare appointing his wife, Kristina Seeley, as his agent. He also designated Kristina as a cotrustee of the Glenn J. Seeley Trust. By early 2015, Glenn had been diagnosed with Alzheimer's disease and moved into a residential facility for people with dementia. In February 2016, Glenn executed a second durable power of attorney, in which he designated his son and grandson, Gregory and Matthew Seeley (both of whom are attorneys licensed to practice law in Ohio), as his agent and successor agent, respectively. Whipple alleged that Glenn had amended his trust to designate Gregory as cotrustee in Kristina's place.

{¶ 6} In November 2016, Kristina hired Whipple to challenge the validity of the February 2016 documents. In January 2017, Whipple filed a lawsuit on behalf of Kristina and Glenn (collectively, "the Seeleys") against Gregory and attorney Gary Ebert in the Cuyahoga County Court of Common Pleas ("the Seeley litigation"). On February 13, 2017, Roger Synenberg entered an appearance on behalf of the defendants, along with two other attorneys.

{¶ 7} Although the Seeley litigation was contentious, the parties entered into a settlement agreement in December 2018. After a hearing, the court issued a journal entry in January 2019, finding that the proposed settlement was fair and reasonable and directing the parties to complete the remaining obligations under the agreement, including filing a dismissal entry with the court.

{¶ 8} In March 2019, Synenberg began to question whether Kristina was competent to sign the settlement agreement; Whipple asserted that she was. During an April 2019 status conference, the inquiry appeared to focus more on Kristina's capacity, though the parties continued to refer to Kristina's competence and capacity interchangeably. At the conclusion of the hearing, the court directed

Whipple to submit a letter from a medical professional indicating that Kristina was competent to oversee the cotrustee position and the medical power of attorney. The court also instructed the parties to file a stipulated dismissal entry by May 14, 2019.

{¶ 9} Whipple submitted documents to defendants' counsel in an effort to comply with the court's order, but Synenberg maintained that they were insufficient to establish Kristina's mental capacity. After the deadline for filing the dismissal entry passed, the court scheduled a hearing for Monday, June 10, 2019.

{¶ 10} On June 3, 2019, Whipple sent a letter to the judge noting his strenuous objection to the consideration of Kristina's mental capacity in the case and enclosing confidential copies of the documents that he had previously submitted to defense counsel as well as an additional document. In a June 6 email, Synenberg made it clear that his clients did not intend to drop the issue of Kristina's capacity.

*Whipple's allegations against Synenberg*

{¶ 11} At 4:05 p.m. on Friday, June 7, 2019, Whipple filed a motion in the Seeleys' case to refer Synenberg to OLAP. In that motion, Whipple alleged that Synenberg's performance as a lawyer was impaired by a mental or emotional condition or some other condition and repeatedly described Synenberg's conduct in terms that questioned his fitness as a lawyer. For example, Whipple accused Synenberg of (1) retaliating against a witness, who testified against one of his clients in an unrelated case, by sending an anonymous letter to the prospective employer of the witness in which he referred to the witness as a "snitch," (2) making a misrepresentation to Judge Hagan's staff attorney (and thereby the court) regarding Whipple's conduct at a deposition, (3) leaving a deposition while a question was pending and failing to return to complete the deposition, and (4) making false and defamatory statements about Whipple's paralegal (who is also Whipple's wife) that resulted in the issuance of a cease-and-desist letter by her legal counsel.

*Prof.Cond.R. 1.2(e)*

**{¶ 12}** The board found that Whipple's motion was nothing more than a thinly veiled threat of criminal charges and professional-misconduct allegations against Synenberg in violation of Prof.Cond.R. 1.2(e), which provides that "[u]nless otherwise required by law, a lawyer shall not present, participate in presenting, or threaten to present criminal charges or professional misconduct allegations solely to obtain an advantage in a civil matter."

**{¶ 13}** Regarding Whipple's allegation that Synenberg had engaged in witness retaliation in an unrelated case, the board noted that R.C. 2921.05 classifies witness retaliation as a third-degree felony. In addition, the board found that an attorney who engaged in witness retaliation would also violate several rules of professional conduct, including rules that prohibit a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness and that prohibit a lawyer from engaging in conduct that is prejudicial to the administration of justice. *See* Prof.Cond.R. 8.4(b) and (d). Therefore, the board determined that Whipple's allegation that Synenberg had engaged in witness retaliation effectively accused him of committing a crime and engaging in professional misconduct.

**{¶ 14}** The board also found that Whipple's allegations that Synenberg had made a misrepresentation to the court and walked out of a deposition effectively alleged violations of Prof.Cond.R. 3.4, which prohibits an attorney from unlawfully obstructing another party's access to evidence *and* knowingly disobeying an obligation under the rules of a tribunal. In addition, the board found that by alleging that Synenberg had made false and defamatory statements about Whipple's paralegal, Whipple had effectively alleged a violation of Prof.Cond.R. 8.4(c), which prohibits an attorney from engaging in conduct that involves dishonesty, fraud, deceit, or misrepresentation.

**{¶ 15}** The board also found that Whipple's motion repeatedly described Synenberg's conduct in terms that questioned Synenberg's fitness as a lawyer. For

example, Whipple claimed that (1) Synenberg's conduct was "not [what] one would expect from a lawyer thinking and acting rationally," (2) Synenberg had engaged in "irrational conduct which supports a reasonable belief that [he] may be suffering from performance issues," and (3) Synenberg's "impulsive, irrational conduct * * * might reasonably justify further investigation." The board found that those phrases were unmistakable references to Prof.Cond.R. 8.3(a), which provides that "[a] lawyer who possesses unprivileged knowledge of a violation of the Ohio Rules of Professional Conduct that raises a question as to any lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform a disciplinary authority empowered to investigate or act upon such a violation."

{¶ 16} There was no doubt, according to the board, that Whipple's motion successfully conveyed a threat to report Synenberg's conduct. The board noted that the threat was not unintentional, merely an angry reaction to a frustrating situation, or as Whipple claimed, a misguided effort to get help for a colleague. Instead, the board found that Whipple intended for the threat to pressure Synenberg to abandon the issue of Kristina's capacity and agree to dismiss the case—or in other words, to obtain an advantage in a civil matter.

{¶ 17} In support of that finding, the board observed that Whipple's motion clearly connected his accusations against Synenberg with the dismissal of the case. Indeed, the first paragraph of the motion emphasized that the matter was set for a hearing on Monday, June 10, 2019, that there were no other pending motions, and that the court had directed the parties to submit a stipulated dismissal entry but that the case remained pending. And while the motion was styled as a motion to refer Synenberg to OLAP, the motion concluded with the following language:

> All Plaintiffs ask for is the dismissal entry that has been overdue since January of this year. This inexcusable delay has been a financial and emotional nightmare for a case that was settled

months ago. With the granting of the instant Motion, the docket is clear and the final dismissal, with prejudice as to the Complaint and Counterclaim, should be filed immediately.

{¶ 18} The board acknowledged that "[o]n its face, the fitness motion ties together two requests that are not related—a referral to OLAP for Synenberg on the one hand, and the entry of the stipulated dismissal on the other." But any uncertainty the board had about the purpose of Whipple's motion disappeared when it reviewed what Whipple said at the June 10 hearing. At that hearing, Whipple insisted multiple times that if the defendants would sign the stipulated dismissal without further exploration of Kristina's capacity, Judge Hagan would not have to act on his motion.

{¶ 19} For example, Whipple stated:

If I may first mention, because I wasn't entirely clear what the agenda was for today's hearing, at our previous hearing, you had ordered the execution of a stipulated journal entry. I have a stipulated journal entry here that I'm prepared to sign; and if the other two attorneys sign it and you sign it and it's filed with the clerk, this case is over.

If that's the case, there's nothing more to discuss.

He also stated:

If the attorneys are not going to unconditionally sign the stipulated order, then I would like to speak on the motion that I filed Friday because that is the only motion pending before you. There is no other motion about [Kristina's] mental capacity before you. So

to me it's really a question, Do we dismiss the case or do we proceed with my motion?

{¶ 20} Whipple continued to tie his motion to the dismissal of the case, stating: "If they still have conditions, then I want to discuss my motion. If they don't have conditions, I am ready to sign [the stipulated dismissal] right now."

{¶ 21} The board found that Whipple's use of these "if—then" statements revealed that the motion's request for a referral to OLAP was "nothing more than a pretense to allow [Whipple] to outline the accusations that formed the foundation of his threat to Synenberg in order to secure a dismissal entry." Further, it found that "[h]is concern for Synenberg's mental health was not substantial enough to survive the stipulated dismissal of the case," because the true purpose of the motion was to obtain the dismissal of the case.

{¶ 22} During his disciplinary hearing, Whipple admitted that he made no effort to contact OLAP *before* filing his motion. While recognizing that Whipple eventually called OLAP, the board noted that he did so only *after* the June 10 hearing, during which Judge Hagan suggested that Whipple's motion may have violated Prof.Cond.R. 1.2(e). Whipple also admitted that he had filed his motion on the public docket, even though OLAP is intended to be a confidential resource and Whipple had taken efforts to protect his own client's confidentiality by emailing documentation regarding Kristina's capacity directly to the judge just days before he made his public allegations against Synenberg. Furthermore, the board found that the timing of Whipple's motion—which was filed late in the afternoon on Friday before a Monday morning hearing—maximized the pressure on Synenberg by leaving him little time to respond to the allegations and the entire weekend to ponder the potential damage to his reputation and practice.

{¶ 23} The board rejected Whipple's efforts at his disciplinary hearing to recast his motion as a demonstration of genuine concern for Synenberg's well-

being. Ultimately, the board concluded that Whipple violated Prof.Cond.R. 1.2(e) because his sole purpose in filing his motion was to force Synenberg to forgo the issue of Kristina Seeley's capacity and dismiss the case.

*Prof.Cond.R. 3.1*

**{¶ 24}** Prof.Cond.R. 3.1 prohibits a lawyer from asserting an issue in a proceeding unless there is a nonfrivolous basis in law and fact for doing so. In this case, Whipple stated that he filed his motion in accordance with two authorities—Jud.Cond.R. 2.14(A) (requiring a judge who has a reasonable belief that the performance of a lawyer is impaired by drugs or alcohol or by a mental, emotional, or physical condition, to take appropriate action, which may include a confidential referral to a lawyer-assistance program) and R.C. 2305.28(D) (providing a qualified privilege for statements made to a peer-review committee, professional-standards-review committee, or counseling and assistance committee of a state or local professional organization).

**{¶ 25}** However, the board noted that Jud.Cond.R. 2.14(A) applies only to judges and that R.C. 2305.28(D) does nothing more than insulate those who provide information to certain peer-review committees from liability for civil damages. The board acknowledged that in the underlying litigation, Judge Hagan denied the defendants' motion to declare Whipple's motion frivolous and award sanctions pursuant R.C. 2323.51, though at Whipple's disciplinary hearing, she testified that she believed the motion was frivolous. Finding that Whipple could point to no authority that permits, much less requires, an attorney to publicly file a motion to obtain an OLAP referral, the board concluded that his motion "was frivolous and was of the type of conduct that Prof.Cond.R. 3.1 is intended to prevent."

*Prof.Cond.R. 8.4(a) and (d)*

**{¶ 26}** Prof.Cond.R. 8.4(a) prohibits a lawyer from violating or attempting to violate the Rules of Professional Conduct, and Prof.Cond.R. 8.4(d) prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice.

In this case, the board found that the true purpose of Whipple's motion to refer Synenberg to OLAP was to force Synenberg to dismiss the Seeley case without further exploration of Kristina's capacity. It further determined that his attempt to involve Judge Hagan in his scheme to force Synenberg's hand was the "epitome of unfairness" and a clear violation of Prof.Cond.R. 8.4(a) and 8.4(d).

**Whipple's Objections to the Board's Findings of Misconduct**

{¶ 27} In his first two objections to the board's report, Whipple contends that relator failed to prove by clear and convincing evidence that he violated Prof.Cond.R. 1.2(e) and 3.1. He also asserts that the board's finding that his motion was frivolous is barred by the doctrine of res judicata.

{¶ 28} Whipple argues that the allegations he made in his motion to refer Synenberg to OLAP did not constitute a threat and that contrary to the board's findings, the purpose of his motion was neither to prevent an examination of Kristina's capacity nor to compel a dismissal of the Seeley litigation. Instead, he testified and continues to claim that it was his intention to invoke Judge Hagan's duty under Jud.Cond.R. 2.14 to refer Synenberg to OLAP.

{¶ 29} However, the board found that Whipple's belated attempts to demonstrate genuine concern for Synenberg were "undermined by the simple fact that, at every turn, [Whipple] made deliberate choices aimed at exerting pressure on Synenberg, and not to find him help." The board found Whipple's own words during the Seeley litigation more credible than his testimony at his disciplinary hearing. We defer to the board's determinations in that regard because our independent review shows that the record does not weigh heavily against them. *See, e.g.*, *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8, citing *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 198, 754 N.E.2d 235 (2001).

{¶ 30} Indeed, after an independent review of the record, we find that the evidence overwhelmingly supports the board's finding that the sole purpose of

10

Whipple's motion was to force Synenberg to forgo the issue of Kristina's capacity and dismiss the case. Whipple contends that his refusal to withdraw the motion even after he obtained the desired dismissal and his subsequent call to OLAP refutes the finding. But those actions do not refute the finding, because the record shows that Whipple repeatedly offered to withdraw his motion in exchange for the dismissal *until* Synenberg's cocounsel accused him of filing his "scurrilous" motion to gain leverage and the judge stated her intention to entertain that accusation. Only then did his focus shift to his purported goal of seeking help for Synenberg.

{¶ 31} We are also unpersuaded by Whipple's contention that the doctrine of res judicata precludes this court from considering whether his motion violated Prof.Cond.R. 3.1. Whipple bases this argument on Judge Hagan's denial of a motion to sanction him for frivolous conduct, under R.C. 2323.51, in the Seeley litigation. Whipple offers no authority to support his contention that the doctrine of res judicata can in any way preclude this court from exercising its original jurisdiction over the discipline of attorneys admitted to the practice of law in this state. *See* Article IV, Section 2(B)(1)(g), Ohio Constitution.

{¶ 32} The doctrine of res judicata renders final judgments conclusive only when both actions involve the same parties (or those in privity with them), identical issues to which the evidence is directed, and the identical quantum of proof necessary to render both the original and subsequent judgments. *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 99-100, 322 N.E.2d 665 (1975). Applying those standards, we held in *Weaver* that an attorney's acquittal on criminal charges does not preclude charges of professional misconduct under principles of res judicata, because those proceedings do not share the same parties, purpose, or quantum of proof. *Id.* There is likewise no shared parties, purpose, or quantum of proof between the motion for sanctions for frivolous conduct in the Seeley litigation and this disciplinary proceeding. Consequently, the doctrine of res judicata has no application here.

**{¶ 33}** Based on the foregoing, we overrule each of Whipple's objections to the board's findings of misconduct and adopt those findings as our own.

## Recommended Sanction

**{¶ 34}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 35}** The board found that three aggravating factors are present in this case. First, the board found that Whipple's motion was not his first attempt to use the threat of discipline as a means to bend another attorney to his will. In fact, it is undisputed that after Kristina retained him to challenge the validity of the February 2016 estate-planning documents, Whipple's first action was to file a disciplinary grievance against Gary Ebert and Gregory and Matthew Seeley. In that grievance, he alleged that Ebert, Gregory, and Matthew had engaged in the "unethical treatment of a mentally impaired man and his wife," and he sought the rescission of the February 2016 documents and all actions taken under their authority. Consequently, the board found that Whipple engaged in a pattern of misconduct that began with his filing of that grievance and culminated with the filing of his motion to refer Synenberg to OLAP and his conduct at the June 10, 2019 hearing. *See* Gov.Bar R. V(13)(B)(3). In addition, the board found that Whipple refused to acknowledge the wrongful nature of his conduct and caused harm to the public's perception of the legal profession and to Synenberg's reputation by filing a public document alleging that Synenberg lacked the requisite fitness to practice law. *See* Gov.Bar R. V(13)(B)(7) and (8).

**{¶ 36}** In mitigation, the board found that Whipple had no prior discipline, participated and cooperated in the disciplinary process, and presented several letters and the testimony of three witnesses regarding his good character. *See* Gov.Bar R. V(13)(C)(1), (4) and (5). However, the board determined that those mitigating

factors were insufficient to overcome the severity of Whipple's misconduct—which it found to be a calculated decision to threaten a fellow attorney to gain an advantage in a civil matter.

{¶ 37} In determining the appropriate sanction for Whipple's misconduct, the board considered a number of cases in which we imposed sanctions ranging from public reprimands to indefinite suspensions for misconduct bearing some similarities to the misconduct at issue in this case. Believing this case to be one of first impression, the board afforded exceptional weight to the content of Whipple's publicly filed motion and the comments that he made at the June 10, 2019 hearing and recommended that he be suspended for one year with six months conditionally stayed.

**Whipple's Objections to the Aggravating Factors Found by the Board**

{¶ 38} In his third objection to the board's report, Whipple challenges the board's findings that three aggravating factors are present in this case.

{¶ 39} First, Whipple asserts that there is no lawful basis to consider the grievance filed against Gary Ebert and Gregory and Matthew Seeley as part of a pattern of misconduct, because he (1) filed it on behalf of his clients, (2) did not seek to use that filing to gain an advantage in the Seeley litigation, and (3) was not charged with any misconduct arising from that filing. It is true that relator's complaint did not expressly charge Whipple with misconduct in relation to his filing of that disciplinary grievance. Nonetheless, the complaint alleged that Whipple's first course of conduct to challenge the execution of the 2016 estate-planning documents was to use the disciplinary process to avoid the civil-litigation process. Indeed, the record demonstrates that Whipple drafted, signed, and filed that grievance on behalf of his clients and accused the three attorneys of conspiring "to induce[] a man known by them to be mentally incompetent to execute a power of attorney and other legal documents so as to give them access to his wealth." But rather than seek disciplinary sanctions for their alleged misconduct, Whipple

demanded that the three attorneys "immediately rescind the Power of Attorney and other improper documents, and all actions that have been taken under the authority of [those documents]," and "make restitution to [his clients] for any damages or losses they have suffered as a result of [those] actions." On these facts, the board reasonably found that that grievance was the first step in Whipple's pattern of misconduct.

{¶ 40} Next, Whipple contends that his expression of regret and remorse for publicly filing the motion to refer Synenberg to OLAP contradicts the board's finding that he exhibited a "complete refusal to accept responsibility for his actions or acknowledge the wrongfulness of his conduct." Whipple testified that he regretted his actions to the extent that his public filing of the motion violated Synenberg's expectation of privacy and caused him embarrassment, although he remained entrenched in his position that he did not violate any rules of professional conduct.

{¶ 41} There is no doubt that Whipple was entitled to defend himself against the allegations of misconduct that relator leveled against him. However, Whipple never acknowledged that his own words in his motion, his prayer for relief, or his statements at the June 10, 2019 hearing sought just one goal—to obtain the long-desired dismissal of the Seeley litigation. On the contrary, he stood by those words, which expressly and inextricably linked his accusations against Synenberg with the dismissal of the litigation, and refused to acknowledge that it was he who forged that link. Whipple's belated expression of regret is insufficient to overcome his refusal to acknowledge the wrongful nature of his conduct.

{¶ 42} In his final argument in support of this objection, Whipple asserts that the record does not support the board's finding that he caused harm to Synenberg's reputation. Specifically, he contends that Synenberg's alleged retaliation against a witness had already been publicized in a June 5, 2019 article on Cleveland.com and that although Synenberg was not happy about the motion,

he was not really harmed, because as Synenberg testified, he has "a pretty thick skin."

**{¶ 43}** An attorney's most valuable asset is his or her professional reputation for competence, honesty, and integrity. *See Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 12, 688 N.E.2d 258 (1998). Here, Whipple went far beyond the previously publicized incident of witness retaliation to make unfounded allegations that Synenberg's performance as an attorney was adversely affected by some unidentified condition. There can be no doubt that those allegations—made in a public filing—caused at least some harm to Synenberg's reputation for competence, though that harm is not quantifiable. Moreover, Whipple's objection fails to consider the harm that his conduct wrought on the public's perception of the legal profession by reinforcing one of the worst stereotypes of attorneys—that they will abuse the legal process to gain an unfair advantage for their clients.

**{¶ 44}** Contrary to Whipple's claims, the record amply supports the board's findings that three aggravating factors are present in this case. We, therefore, overrule Whipple's third objection to the board's report.

### Whipple's Objection to the Board's Recommended Sanction

**{¶ 45}** In his fourth and final objection, Whipple contends that the recommended sanction of a one-year suspension with six months stayed on conditions is not supported by our precedent or warranted by the facts of this case. He asserts that the customary sanction for a single violation of Prof.Cond.R. 1.2(e) is no more than a public reprimand. Furthermore, he argues that when placed in the proper context and given the appropriate weight, his conduct and the aggravating and mitigating factors present in this case warrant a sanction no greater than a fully stayed suspension. We respectfully disagree.

**{¶ 46}** Whipple cites two cases to support the proposition that a public reprimand is the appropriate sanction for violations of Prof.Cond.R. 1.2(e)—*Butler*

*Cty. Bar Assn. v. Cunningham*, 118 Ohio St.3d 188, 2008-Ohio-1979, 887 N.E.2d 343, and *Cincinnati Bar Assn. v. Cohen*, 86 Ohio St.3d 100, 712 N.E.2d 118 (1999). In each of those cases, the attorney committed a single violation of former DR 7-105 which, like Prof.Cond.R. 1.2(e), prohibited a lawyer from threatening to pursue criminal charges solely to obtain an advantage in civil litigation. Those cases, however, are readily distinguishable from this case.

**{¶ 47}** Cunningham represented a woman regarding certain financial matters stemming from her earlier divorce. In an attempt to resolve those matters on terms favorable to his client, Cunningham wrote a letter to the client's ex-husband suggesting that he had not disclosed all of the marital assets in the divorce proceeding—including funds that might have been illegally obtained. *Cunningham* at ¶ 3-4. The letter presented a list of demands and promised that the client would forgo further proceedings if the ex-husband complied. *Id.* at ¶ 5. In a similar fashion, Cohen sent three letters to a former client threatening to pursue criminal charges if the client did not make good on two checks for his legal fees that had been returned by the bank for insufficient funds. *Cohen* at 118-119.

**{¶ 48}** Cunningham conceded that he violated his duty under DR 7-105. *Cunningham* at ¶ 7. His case presented no aggravating factors and four mitigating factors—namely he had no disciplinary record, did not act with a dishonest or selfish motive, cooperated in the disciplinary proceedings, and presented evidence of his good character and reputation. *Id.* at ¶ 9. In *Cohen*, the panel did not identify any aggravating or mitigating factors and attributed Cohen's misconduct to an isolated incident of bad judgment. In addition, upon learning that his client had filed a grievance against him, Cohen wrote the client to apologize and acknowledge his improper conduct. *Cohen* at 119.

**{¶ 49}** Like Cunningham and Cohen, Whipple committed a single violation of a rule that prohibited lawyers from threatening to pursue criminal charges solely

to obtain an advantage in civil litigation. But Whipple also violated Prof.Cond.R. 3.1, 8.4(a), and 8.4(d).

{¶ 50} There are also significant aggravating factors present in this case. Whipple engaged in a pattern of misconduct over a period of several years and refused to acknowledge the wrongful nature of his conduct or accept responsibility for his actions—other than to express regret for making the allegations in a publicly filed motion. In addition to the harm that Whipple's allegations inflicted on Synenberg's reputation, his conduct also caused immeasurable harm to the public's perception of the legal profession. On these facts, Whipple's conduct warrants a sanction greater than the public reprimand he seeks.

{¶ 51} In determining the appropriate sanction for Whipple's conduct, the board considered *Akron Bar Assn. v. Groner*, 131 Ohio St.3d 194, 2012-Ohio-222, 963 N.E.2d 149. Groner had filed a pleading that contained misrepresentations and false accusations about a person who had applied to be the administrator of a probate estate. The board found that Groner had violated rules that prohibit a lawyer from (1) asserting an issue unless there is a basis in law or fact for doing so, (2) knowingly making false statements of law or fact to a tribunal *and* to a non-client, and (3) offering evidence that the lawyer knows to be false and requiring a lawyer to take reasonable measures to remedy the situation when the lawyer discovers the evidence is false. *Groner* at ¶ 2. The board also found that Groner's conduct constituted a matter of fundamental dishonesty that was prejudicial to the administration of justice and adversely reflected on her fitness to practice law in violation of Prof.Cond.R. 8.4(c), (d), and (h). *Id*. at ¶ 12. The board recommended that she be suspended from the practice of law for one year with six months conditionally stayed. *Id.* at ¶ 2.

{¶ 52} Groner objected to the board's findings of misconduct and recommended sanction, arguing that she had made the statements in good faith and believed them to be correct. *Id.* at ¶ 13. Noting that relator had agreed that Groner's

conduct was negligent or reckless—but fell short of being intentionally fraudulent or deceitful— and that Groner had made a timely attempt to amend the pleading once she suspected that her allegations were not correct, we dismissed the alleged violations of Prof.Cond.R. 8.4(c), (d), and (h). *Id.* at ¶ 16-17. We determined that Groner had exercised poor judgment and recklessly prepared the pleading using information that she had hastily obtained and inadequately reviewed. *Id.* at ¶ 22. In light of mitigating evidence that included no prior discipline, Groner's cooperation in the disciplinary proceedings, evidence of her good character and reputation, and the resolution of the underlying probate proceeding, we concluded that an actual suspension was not necessary to protect the public from future harm. We, therefore, rejected the board's recommended sanction and imposed a six-month conditionally stayed suspension for Groner's misconduct. *Id*. at ¶ 26.

{¶ 53} Whipple argues that if the mitigating factors here are appropriately weighed, this court should reach the same conclusion that it did in *Groner*—that no actual suspension from the practice of law is necessary to protect the public from future harm.

{¶ 54} We acknowledge that Whipple has no record of prior discipline and that he has participated and cooperated in the disciplinary process. We also acknowledge that he has presented letters from six attorneys and two judges who have attested to his competence, professionalism, and ethics. He has also presented testimony from three additional attorneys regarding his volunteer work for the Legal Aid Society of Cleveland and his reputation for honesty and integrity. Like the board, however, we conclude that this mitigating evidence is insufficient to overcome the significant aggravating factors in this case—not the least of which is Whipple's failure to acknowledge the wrongful nature of his conduct. We, therefore, reject Whipple's assertion that a fully stayed suspension will adequately protect the public from future harm in this case.

{¶ 55} Ultimately, we conclude that the facts of this case are most comparable to those in *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35. Wise believed that a court's ruling required a child's aunt to immediately return custody of the child to his client, the child's mother. *Id.* at ¶ 3. When the aunt failed to turn the child over to the mother, Wise called the aunt's employer, the Cleveland Police Department, and suggested that kidnapping charges might be filed if she did not comply with his request to turn over the child. *Id*. at ¶ 5-6. He further implied that he would personally go to his friend, the county prosecutor, to pursue kidnapping charges. *Id.* We found that Wise threatened to present criminal charges solely to obtain an advantage in a civil matter and that he also asserted a position that would serve merely to harass or maliciously injure another. Just two mitigating factors were present—Wise had no prior discipline and did not act with a dishonest or selfish motive. *Id*. at ¶ 15. However, we found multiple aggravating factors, including that Wise failed to accept any responsibility for his wrongdoing, harmed the aunt's relationship with her employer, and made several attempts to delay the disciplinary process. *Id*. at ¶ 16-19. Finding that Wise had compromised his duty to promote confidence in the legal system and the legal profession, failed to acknowledge the seriousness of his misconduct, and unnecessarily complicated the disciplinary proceedings, we suspended him from the practice of law for one year with six months stayed on the condition that he commit no further misconduct. *Id.* at ¶ 29, 34-35.

{¶ 56} Whipple similarly compromised his duty to promote confidence in the legal system and the profession by engaging in a pattern of misconduct intended to threaten his fellow attorneys with allegations of professional misconduct and criminal charges to gain an advantage in civil litigation. Although Whipple has expressed some regret over his decision to make the allegations against Synenberg in a public filing, he has failed to acknowledge that it was unethical for him to link those allegations to his prayer for relief in the underlying litigation. On these facts,

we believe that the sanction recommended by the board and imposed in *Wise* is necessary to protect the public and the legal profession and to send a strong message to the bar that such gamesmanship will not be tolerated.

**Conclusion**

**{¶ 57}** Based on the foregoing, we overrule each of Whipple's four objections to the board's report and adopt the board's findings of misconduct and recommended sanction.

**{¶ 58}** Accordingly, Douglas Paul Whipple is suspended from the practice of law in Ohio for one year with six months stayed on the conditions that he engage in no further misconduct and pay the costs of these proceedings.  If Whipple fails to comply with the conditions of the stay, the stay will be lifted and he will serve the entire one-year suspension.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Tucker Ellis, L.L.P., Robert J. Hanna, Melissa Z. Kelly, and Emily J. Johnson; and Heather M. Zirke, Bar Counsel, for relator.

Douglas P. Whipple, pro se.

_____